# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY R. VARRAN, by next friend, JULIA M. VARRAN,

        Plaintiff,

v

PETER J. GRANNEMAN,

        Defendant-Appellant,

and

DEBORAH GRANNEMAN and JAMES GRANNEMAN,

        Interveners-Appellees.

FOR PUBLICATION
October 13, 2015
9:10 a.m.

Nos. 321866; 322437
Washtenaw Circuit Court
LC No. 03-000271-DC

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

SERVITTO, J.

These matters are before us on remand from our Supreme Court for further consideration of our June 20, 2014, order dismissing father's claim of appeal in Docket No. 321866 for lack of jurisdiction and our July 16, 2014, order dismissing father's claim of appeal in Docket No. 322437 for the same reason. The Supreme Court directed us to "issue an opinion specifically addressing the issue of whether an order regarding grandparenting time may affect custody within the meaning of MCR 7.202(6)(a)(iii), or otherwise be appealable by right under MCR 7.203(A)." *Varran ex rel Varran v Granneman*, 497 Mich 928; 856 NW2d 555 (2014); *Varran ex rel Varran v Granneman*, 497 Mich 929; 856 NW2d 555 (2014).

Plaintiff Emily Varran ("mother"), who is deceased, and father Peter Granneman ("father") are the parents of a minor child, "A", born on November 17, 2002, when the parents were both minors. The parents never married. The mother initially had custody of A, but when A was 8 months old he went to live with father, who resided with his parents, intervening petitioners ("grandparents"). This arrangement continued until 2005 when A was 2 ½ years old. At that time, grandparents asked father to leave their home due to hostility and conflicts. A continued to reside with grandparents and father initially visited A once a week at grandparents' home. Within a few months, father had A with him on Saturday nights at his apartment.

Mother passed away in 2007.  In 2007, father also began having A with him on Friday and Saturday nights.  In the summer of 2012, A began living with father during the week and visiting with grandparents every weekend.  In the spring of 2013, father reduced A's visits with grandparents to every other weekend.  In May 2013, father advised grandparents that they would no longer have overnight visits with A and that any contact between them and A would be under father's supervision.

Grandparents, as intervening petitioners, filed a motion for grandparenting time with A in June 2013.  In a July 2013 order, the trial court awarded grandparents temporary visitation with A every other weekend from Saturday at 10:00 am to Sunday at 6:00 p.m. and set the matter for an evidentiary hearing.  At the conclusion of the evidentiary hearing, the trial court issued a written opinion on April 25, 2014, wherein it determined that A would suffer a substantial risk of future harm to his mental and emotional health if grandparenting time were not granted.  The trial court additionally applied the best interest factors set forth in MCL 722.27b and found that it was in A's best interest to allow grandparenting time.  The trial court thereafter, on May 30, 2014, entered an order providing grandparents with visitation with A every other Saturday from 10:00 a.m. until Sunday at 6:00 p.m.  Father claimed an appeal from the trial court's April 25, 2014, opinion granting grandparenting time and its May 30, 2014, order setting a specific grandparenting time schedule.  As previously indicated, this Court dismissed both appeals and, on remand, our Supreme Court directed us to address the issue of "whether an order regarding grandparenting time may affect custody within the meaning of MCR 7.202(6)(a)(iii), or otherwise be appealable by right under MCR 7.203(A)."  The Supreme Court further directed that if this Court determines that the lower court order is appealable by right, we shall take jurisdiction over father's claims of appeal and address their merits.  *Varran ex rel Varran*, 497 Mich 928; *Varran ex rel Varran*, 497 Mich 929.  We consolidated both appeals.

## I.  Application of MCR 7.202(6)(a)(iii)

The first issue for resolution is, as directed by the Supreme Court, whether an order for grandparenting time affects custody within the meaning of MCR 7.202(6)(a)(iii), making it appealable as of right under MCR 7.203(A).  The issue of whether this Court has jurisdiction to hear an appeal is an issue reviewed de novo.  *Wardell v Hincka*, 297 Mich App 127, 130; 822 NW2d 278 (2012).  The interpretation and application of a court rule is a question of law that this Court reviews de novo.  *Haliw v Sterling Heights*, 471 Mich 700, 704; 691 NW2d 753 (2005).

MCR 7.203(A) provides:

The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:

(1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court

(a) on appeal from any other court or tribunal;

(b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere:

An appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right.

(2) A judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule.

MCR 7.202(6)(a) defines a "final judgment" or "final order" in a civil case as the following:

(i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order,

(ii) an order designated as final under MCR 2.604(B),

(iii) in a domestic relations action, a postjudgment order affecting the custody of a minor,

(iv) a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule.

(v) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity[.]

The rules of statutory interpretation apply to the interpretation of court rules. *Reed v Breton*, 279 Mich App 239, 242; 756 NW2d 89 (2008). The goal of court rule interpretation is to give effect to the intent of the drafter, the Michigan Supreme Court. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). The Court must give language that is clear and unambiguous its plain meaning and enforce it as written. *Id.* Each word, unless defined, is to be given its plain and ordinary meaning, and the Court may consult a dictionary to determine that meaning. *TMW Enterprises, Inc v Dep't of Treasury*, 285 Mich App 167, 172; 775 NW2d 342 (2009).

On appeal, father and grandparents limit their arguments to whether an order regarding grandparenting time is a postjudgment order affecting the custody of a minor under MCR 7.202(6)(a)(iii). However, this Court was not tasked by the Supreme Court with only determining whether an order regarding parenting time was a "final judgment" or "final order" under MCR 7.202(6)(a)(iii). It was also tasked with determining whether an order regarding grandparenting time would otherwise be appealable by right under MCR 7.203(A). *Varran*, 497 Mich at 929; *Varran*, 497 Mich at 928. Under MCR 7.203(A), this Court has jurisdiction of an appeal filed from a judgment or order of the trial court, as defined in MCR 7.202(6), MCR 7.203(A)(1), or from a judgment or order by which an appeal of right has been established by law or court rule, MCR 7.203(A)(2). There is no law or court rule providing an appeal by right from an order regarding grandparenting time. Thus, under MCR 7.203(A), there is only an appeal by right from an order regarding grandparenting time if the order is a "final order" or "final judgment" as defined in MCR 7.202(6). MCR 7.203(A)(1).

-3-

Two definitions of a "final judgment" or "final order" are potentially applicable to the present case: (1) "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment, MCR 7.202(6)(a)(i); and (2) "a postjudgment order affecting the custody of a minor," MCR 7.202(6)(a)(iii). We will address each in turn.

The grandparenting time statute provides two ways that an action for grandparenting time can be commenced. MCL 722.27b(3) provides:

A grandparent seeking a grandparenting time order shall commence an action for grandparenting time, as follows:

(a) If the circuit court has continuing jurisdiction over the child, the child's grandparent shall seek a grandparenting time order by filing a motion with the circuit court in the county where the court has continuing jurisdiction.

(b) If the circuit court does not have continuing jurisdiction over the child, the child's grandparent shall seek a grandparenting time order by filing a complaint in the circuit court for the county where the child resides.

The grandparents did not commence their action for grandparenting time by filing a complaint in this matter. Instead, a child custody dispute concerning A was initiated by A's mother in the trial court in 2003. Grandparents sought grandparenting time by filing a motion with the trial court in that case. The trial court found that entry of a grandparenting time order would be in the best interests of A and entered such an order on May 30, 2014. Because the May 30, 2014, order provided a grandparenting time schedule, it disposed of grandparents' claim for grandparenting time and adjudicated the rights and liabilities of father and grandparents. It cannot be ignored, however, that MCR 7.202(6)(a)(i) specifically defines a "final judgment" or "final order" to mean "*the* first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." (emphasis added). Use of the singular definite article "the" before "first judgment" contemplates *one* order in a civil action. See, e.g., *Massey v Mandell*, 462 Mich 375, 382 n 5; 614 NW2d 70 (2000). When A's mother initiated the custody case in 2003, the parties to that case were mother and father and the first order that disposed of the claims and adjudicated all the rights and liabilities of mother and father was the February 2004 consent order regarding custody, parenting time, and support of A. Thus, under the definition of MCR 7.202(6)(a)(i), the February 2004 consent order was the "final judgment" or "final order." Because there was no reversal of the February 2004 consent order, no subsequent order in the case could be considered a "final judgment" or "final order" under MCR 7.202(6)(a)(i). The May 31, 2014, order in this case is therefore not a "final judgment" or "final order" under MCR 7.202(6)(a)(i).

We next turn to whether an order regarding grandparenting time is a postjudgment order affecting the custody of a minor under MCR 7.202(6)(a)(iii). Helpful to this Court's resolution is a review of the few cases that have addressed MCR 7.202(6)(a)(iii). In *Thurston v Escamilla*, 469 Mich 1009; 677 NW2d 28 (2004), our Supreme Court determined that a post-divorce judgment order granting one of the parent's motion for a change of domicile was an order affecting the custody of the minor and was thus a final order, appealable by right. In that case,

the divorce judgment had previously awarded joint legal and physical custody to both parties and the change of domicile would allow one of the parties to move, with the child, to New York.

In *Wardell v Hincka*, 297 Mich App at 132-133, a panel of this Court took a close look at the definition of "affect" when determining whether the denial of a post-judgment motion for change of custody was an order "affecting the custody of a minor" under MCR 7.202(6)(a)(iii) and thus appealable as of right:

> Black's Law Dictionary defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." Black's Law Dictionary (9th ed.), p. 65. In a custody dispute, one could argue, as plaintiff does, that if the trial court's order does not change custody, it does not produce an effect on custody and therefore is not appealable of right. However, one could also argue that when making determinations regarding the custody of a minor, a trial court's ruling necessarily has an effect on and influences where the child will live and, therefore, is one affecting the custody of a minor. Furthermore, the context in which the term is used supports the latter interpretation. MCR 7.202(6)(a)(iii) carves out as a final order among postjudgment orders in domestic relations actions those that affect the custody of a minor, not those that "change" the custody of a minor. As this Court's long history of treating orders denying motions to change custody as orders appealable by right demonstrates, a decision regarding the custody of a minor is of the utmost importance regardless of whether the decision changes the custody situation or keeps it as is. We interpret MCR 7.202(6)(a)(iii) as including orders wherein a motion to change custody has been denied.

In *Rains v Rains*, 301 Mich App 313, 321-22; 836 NW2d 709 (2013), the trial court awarded the parties joint legal and physical custody of their child in a judgment of divorce. The judgment also established a parenting-time schedule. A couple of years later, the mother moved for a change in domicile, seeking to move the child with her to Traverse City and to modify the parenting time schedule. The father, in response, moved for primary physical custody. The trial court denied the mother's request for a change in domicile and this Court found that the mother presented an appeal from a final order under MCR 7.202(6)(a)(iii), despite the father's claim that because the trial court's decision effectively left the parties' custody arrangement as it was, it did not affect the custody of the minor child. The *Rains* Court based its decision, in part on *Wardell*, supra, noting that under *Wardell,* a trial court need not change a custodial arrangement in order for its decision to affect custody. *Rains*, 301 Mich App at 323. Rather, the inquiry was "whether the trial court's order denying plaintiff's motion for a change of domicile influences where the child will live, regardless of whether the trial court's ultimate decision keeps the custody situation 'as is.' " *Rains*, 301 Mich App at 321. From *Rains* and *Wardell*, it can be gleaned that where a motion addresses the amount of time a parent spends with a child such that it would potentially cause a change in the established custodial environment, an order regarding that motion is a final order under MCR 7.202(6)(a)(iii).

MCR 7.202(6)(a)(iii) requires that the order, to be considered a final order appealable by right affects the "custody" of the minor child. "Custody," like "affect," is not defined in Chapter 7 of the Michigan Court Rules. The term "custody," as used in the family law context is, however, defined in Black's Law Dictionary (10th ed) as the following:

The care, control, and maintenance of a child awarded by a court to a responsible adult. Custody involves legal custody (decision-making authority) and physical custody (caregiving authority), and an award of custody [usually] grants both rights . . . .

Further, "the Child Custody Act draws a distinction between physical custody and legal custody: Physical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013). We recognize that the Michigan cases thus far addressing MCR 7.202(6)(a)(iii) have addressed physical custody and have thus focused their inquiries on the effect that would take place on where the child would live. It would thus be tempting to conclude that this Court rule only comes into play when the physical custody of a child is at issue. Although there is a distinction between physical and legal custody, MCR 7.202(6)(a)(iii) contains no distinguishing or limiting language. Based on the plain language of the terms used in MCR 7.202(6)(a)(iii) then, a "postjudgment order affecting the custody of a minor" is an order that produces an effect on or influences in some way the legal custody *or* physical custody of a minor.

The grandparenting time statute, MCL 722.27b, does not *grant* legal custody or physical custody of a child to a grandparent who has obtained a grandparenting time order. Thus, an order for grandparenting time cannot alter or change the legal custody or physical custody of a child. But that does not mean that an order for grandparenting time cannot affect (i.e., produce an effect on or influence) the custody of a child. In *Thurston*, 496 Mich at 1009, for example, despite the fact that the trial court's order that granted the mother's motion for change in domicile did not alter the award of joint legal and physical custody, the Supreme Court still held that the order was one affecting the custody of a minor.

According to father, an order for grandparenting time is one that affects the custody of a minor because it interferes with a parent's right to determine the care, custody, and control of his or her child. A parent has a fundamental right, one that is protected by the Due Process Clause of the Fourteenth Amendment, to make decisions concerning the care, custody, and control of his or her child. *Troxel v Granville*, 530 US 57, 66; 120 S Ct 2054; 147 L Ed 2d 49 (2001) (opinion of O'Connor, J.); *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). It cannot be disputed that a grandparenting time order interferes with a parent's fundamental right to make decisions concerning the care, custody, and control of a child. Although a parent has denied grandparenting time, a grandparent may obtain an order for grandparenting time if the grandparent proves by a preponderance of the evidence that the denial of grandparenting time will create a substantial risk of harm to the child and if the trial court finds by a preponderance of the evidence that a grandparenting time order is in the child's best interests. MCL 722.27b(4)(b), (6). Because a grandparenting time order overrides a parent's legal decision to deny grandparenting time, a grandparenting time order interferes with a parent's fundamental right to make decisions concerning the care, custody, and control of his or her child. Thus, where a parent has legal custody of the child, an order regarding grandparenting time is a postjudgment order affecting the custody of a minor. MCL 7.202(6)(a)(iii). Because father had legal custody

of A, we hold that the May 30, 2014, order was a "final judgment" or "final order" under MCL 7.202(6)(a)(iii) and, therefore, appealable by right, MCR 7.202(A)(1).

It is true, as the dissent points out, that the award or denial of grandparenting time did not change the legal custody arrangement between father and now-deceased mother and did not deprive father of sole legal custody of A. But a "change" in custody is not what is required under MCR 7.202(6)(a)(iii)—the language of the rule requires only an order "affecting" the custody, which is materially different. Furthermore, it cannot be ignored that this dispute does not concern a motion to resolve a postjudgment dispute between two parents. Generally, where postjudgment custody issues warrant the trial court's involvement it is because the two people who have the same fundamental rights to the care and custody of the same child (including decision-making authority) are at odds and the court is required to resolve a stalemate. In this case, however, the dispute concerns the trial court's award of visitation to a third party—one who is not vested with the same fundamental rights that are ordinarily reserved only for parents—and against the express decision of A's only living parent and thus the only parent with legal and physical custody. Moreover, during those periods of visitation, this third party will impliedly have at least some of the rights generally reserved to legal and custodial parents (whether to and how to treat the child if he is not feeling well, whether to expose the child to religion and religious practices, what persons, television programs and movies to expose the child to, etc.).

Based on the above and pursuant to the Supreme Court's remand order in Docket No. 322437, we thus take jurisdiction over father's claim of appeal and address the merits of the arguments raised by father. We will also treat the claim of appeal in Docket No. 321866 as an application for leave to appeal and grant it.

II. Constitutionality of Grandparenting Time Statute

Father argues on appeal that that the grandparenting time statute is unconstitutional. We disagree.

This Court reviews constitutional issues de novo. *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997). Statutes are presumed constitutional, and this Court has a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). The burden of proving that a statue is unconstitutional is on the party challenging the statute. *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007).

The Fourteenth Amendment of the United States Constitution, US Const, Am XIV, prohibits a state from depriving any person of life, liberty, or property, without due process of law. *In re Sanders*, 495 Mich at 409. This promise of due process includes "a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* (quotation omitted). Among these fundamental rights is the right of parents to make decisions concerning the care, custody, and control of their children. *Id.* In other words, "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by

-7-

due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003), reh den 468 Mich 1239 (2003).

MCL 722.27b(4) provides:

All of the following apply to an action for grandparenting time under [MCL 722.27b(3)]:

* * *

(b) In order to give deference to the decisions of fit parents, it is presumed in a proceeding under this subsection that a fit parent's decision to deny grandparenting time does not create a substantial risk of harm to the child's mental, physical, or emotional health. To rebut the presumption created in this subdivision, a grandparent filing a complaint or motion under this section must prove by a preponderance of the evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child's mental, physical, or emotional health. If the grandparent does not overcome the presumption, the court shall dismiss the complaint or deny the motion.

(c) If a court of appellate jurisdiction determines in a final and nonappealable judgment that the burden of proof described in subdivision (b) is unconstitutional, a grandparent filing a complaint or motion under this section must prove by clear and convincing evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child's mental, physical, or emotional health to rebut the presumption created in subdivision (b).

Father argues that the parenting time statute is unconstitutional because of the use of preponderance of the evidence standard. He contends that use of a clear and convincing evidence standard is necessary to protect a parent's fundamental right to make decisions concerning the care, custody, and control of their children. While father contends that the statute is unconstitutional both on its face and as applied to the present case, his argument, as presented, is actually only a facial challenge. "To make a successful facial challenge to the constitutionality of a statute, the challenger must establish that no set of circumstances exists under which the act would be valid." *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303; 586 NW2d 894 (1998). In contrast, an as-applied challenge "alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Bonner v Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014).

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Cruzan v Director, Missouri Dep't of Health*, 497 US 261, 282; 110 S Ct 2841; 111 L Ed 2d 224 (1990) (quotations omitted). "[I]n any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v Kramer*, 455 US 745, 755; 102 S

Ct 1388; 71 L Ed 2d 599 (1982). "Thus, while private parties may be interested intensely in a civil dispute over money damages, application of a 'fair preponderance of the evidence' standard indicates both society's 'minimal concern with the outcome' and a conclusion that the litigants should 'share the risk of error in roughly equal fashion.' " *Id.* The United States Supreme Court has mandated an intermediate standard of proof—clear and convincing evidence—when the individual interests at stake are both "particularly important" and "more substantial than mere loss of money." *Id.* In *Santosky*, the United States Supreme Court held that a state, before it may terminate parental rights, must support its allegations by clear and convincing evidence. *Id.* at 747-748, 768-770.

Father is correct that citing *Troxel v Granville*, 530 US 57, the Supreme Court has recognized that one of the oldest recognized liberty interests is that of a parent to determine the care, custody and control, including the associations of their children. While the Supreme Court in *Troxel* did address a grandparent visitation statute and find it unconstitutional, the statute in this case is not contrary to *Troxel*.

In *Troxel*, 530 US at 57, a Washington statute provided that "[a]ny person may petition the court for visitation rights" and that "[t]he court may order visitation rights for any person when visitation may serve the best interest of the child." Under this statute, the grandparents moved for greater visitation with their two granddaughters than the children's mother would allow. The trial court granted the requested visitation. The United States Supreme Court held that the Washington statute was unconstitutional. According to the Court, the Washington statute when applied to the case, infringed on the mother's fundamental rights as a parent. *Id.* at 67-68, 72-73. It was never alleged, and there was no finding, that the mother was an unfit parent. *Id.* This was important, the Court stated, because "there is a presumption that fit parents act in the best interests of their children." *Id.* at 68. The Court explained that the problem was not that the trial court intervened but that when it did, it gave no special weight to the mother's determination of her daughters' best interests. *Id.* at 69. "[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* at 70. The Court also noted that there was no allegation that the mother ever sought to preclude all visitation, and the trial court gave no weight to the mother's acquiescence to some visitation. *Id.* The Court concluded that the Washington statute was unconstitutional as applied because it failed to accord the determination of the mother, a fit parent, any material weight. *Id.* at 72. According to *Troxel*, then, in order to protect a parent's fundamental right to raise his or her children, a visitation statute must require that the trial court accord deference to the decisions of a fit parent regarding third-party visitation.

Here, the grandparenting time statute requires that a trial court accord deference to a fit parent's decision to deny grandparenting time. There is a presumption that a fit parent's decision to deny grandparenting time does not create a substantial risk of harm to the child. MCL 722.27b(4). To rebut this presumption, a grandparent must prove by a preponderance of the evidence that the parent's decision creates a substantial risk of harm to the child. *Id.* Thus, the grandparenting time statute does not allow a trial court to grant grandparenting time simply because it disagrees with the parent's decision. It thus abides by the *Troxel* deference requirement. The *extent* of deference that must be accorded, however, was not discussed in

-9-

*Troxel* and forms the heart of father's argument—that the amount of deference required by the statute is inadequate and thus renders the statute unconstitutional.

On this issue, father relies principally on *Hunter v Hunter*, 484 Mich 247; 771 NW2d 694 (2009). In *Hunter*, 484 Mich 247, the Supreme Court addressed the conflicting presumptions that arise under the CCA when there is a custody dispute between a parent and a third-party with whom a child has an established custodial environment. Under MCL 722.25(1), in a custody dispute between a parent and a third party, a court "shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is shown by clear and convincing evidence." *Id.* at 258. Under MCL 722.27(1)(c), a court may not modify a previous custody order or issue a new custody order so as to change the established custodial environment unless there is clear and convincing evidence that the change is in the best interest of the child. *Id.* at 259. The Supreme Court held that, in order to protect a fit parent's fundamental constitutional rights, the parental presumption of MCL 722.25(1) must control over the presumption in favor of an established custodial environment in MCL 722.27(1)(c). *Id.* at 263-264. The Supreme Court then addressed a "remaining constitutional question" regarding the amount of deference due under *Troxel* to fit parents. *Id.* at 264. It concluded that MCL 722.25(1) provided sufficient deference to fit parents' fundamental rights to the care, custody, and management of their children because it requires, in order to rebut the parental presumption, clear and convincing evidence that custody by the parent is not in the child's best interests. *Id. at* 264-265. The Supreme Court summarized the clear and convincing evidence standard:

> The clear and convincing evidence standard is "the most demanding standard applied in civil cases . . . . This showing must " 'produce[] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " [*Id.* at 265.]

The Supreme Court concluded that requiring a third party to establish by clear and convincing evidence that it is not in the child's best interests for the parent to have custody "was entirely consistent with *Troxel*'s holding." *Id.* It explained: "Although a fit parent is presumed to act in his or her child's best interests, a court need give the parent's decision only a 'presumption of validity' or 'some weight.' That is precisely what MCL 722.25(1) does when it requires clear and convincing evidence to rebut the presumption." *Id.*

*Hunter* is minimally instructive in the present case. The Supreme Court in *Hunter* merely concluded that MCL 722.25(1) provided sufficient deference to a fit parent's fundamental rights to the care, custody, and management of a child because it required, in order to rebut the parental presumption, clear and convincing evidence that custody by the parent was not in the child's best interest. However, in *Hunter*, a preponderance of the evidence standard was not at issue, nor was it ever discussed. The Supreme Court never said that a clear and convincing evidence standard, rather than a preponderance of the evidence standard, was constitutionally mandated. It simply stated that the standard, as stated in the statute was sufficient.

As previously stated, the grandparenting time statute is consistent with *Troxel*. Because the grandparenting time statute presumes that a fit parent's decision to deny grandparenting time

-10-

does not create a substantial risk of harm to the child, and because it requires a grandparent to prove by a preponderance of the evidence that the parent's decision creates a substantial risk of harm to the child, the statute gives deference to the decisions of a fit parent. *DeRose v DeRose*, 469 Mich 320, 332; 666 NW2d 636 (2003).[1] It does not allow the trial court to grant grandparenting time simply because it disagrees with the parent's decision. *Id.* A parent's fundamental right to make decisions concerning the care, custody, and control of their children is not most at jeopardy when a grandparent petitions a court for grandparenting time. See *Hunter*, 484 Mich at 269. An order granting grandparenting time does not sever, permanently and irrevocably, a parent's parental rights to a child, and it remains subject to modification and termination. Thus, we conclude that, because due process concerns are not at their highest in cases involving requests for grandparenting time, see *id.*, the requirement that grandparents, in order to rebut the presumption given to a fit parent's decision, prove by a preponderance of the evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child is sufficient to protect the fundamental rights of parents. Father's facial challenge to the constitutionality of the grandparenting statute thus fails.

### III. Subject Matter Jurisdiction

Father next contends that the trial court lacked jurisdiction to hear grandparents motion for grandparenting time. We disagree.

As explained in Issue I, *supra*, there are two ways that an action for grandparenting time can be commenced: (1) "[i]f the circuit court has continuing jurisdiction over the child, the child's grandparent shall seek a grandparenting time order by filing a motion with the circuit court in the county where the court has continuing jurisdiction" and (2) "[i]f the circuit court does not have continuing jurisdiction over the child, the child's grandparent shall seek a grandparenting time order by filing a complaint in the circuit court for the county where the child resides." MCL 722.27b(3).

Father argues that the trial court lacked subject-matter jurisdiction over grandparents' motion for grandparenting time because it did not have continuing jurisdiction over A. According to father, the trial court did not have continuing jurisdiction over A because father was awarded sole legal and physical custody over A in 2004 and mother died in 2007.

Subject-matter jurisdiction:

---

[1] The Legislature rewrote the grandparenting time statute in 2004 (2004 PA 542) after the *DeRose* Court, 469 Mich at 333-334, held that the grandparenting time statute was unconstitutional under *Troxel* because it did not require that any deference be given to the decisions that a fit parent makes for his or her child. The Legislature included MCL 722.27b(4)(a) in the rewritten grandparenting time statute so that the statute would comply with *Troxel* and *DeRose*. See *Keenan v Dawson*, 275 Mich App 671, 678-679,; 739 NW2d 681 (2007) where this Court stated that *Troxel* and *DeRose* "directly led to the 2004 amendment of MCL 722.27b" and that, in response to the those decisions, the Legislature attempted to correct the constitutional infirmities of the grandparenting time statute.

is the right of the court to exercise judicial power over that class of cases, not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [*Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938) (quotation omitted).]

A trial court's lack of subject-matter jurisdiction renders a trial court's judgment void. *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992); *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992). However, the only support father has cited in support of his argument is an unpublished opinion per curiam of the Court of Appeals. Unpublished decisions are not binding upon the Court. MCR 7.215(C)(1).

Trial courts have subject-matter jurisdiction over child custody disputes. *Bowie*, 441 Mich at 39. Additionally, the power to hear and decide requests by a child's grandparents for grandparenting time has not been prohibited or given exclusively to another court. See *id.* Pursuant to the CCA, when a child custody dispute has been submitted to the trial court, either as an original action under the CCA or has arisen incidentally from another action in the trial court, the trial court may, among other actions, "upon petition consider the reasonable grandparenting time of maternal or paternal grandparents as provided in [MCL 722.27b.]" MCL 722.27(f). Accordingly, the trial court had subject-matter jurisdiction to hear grandparents' motion for grandparenting time. It had the right to exercise judicial power over requests by a child's grandparents for grandparenting time. *Joy*, 287 Mich at 253-254.

IV. Interpretation of MCL 722.27b

Father contends that to obtain grandparenting time under the statute, a grandparent must first demonstrate that a fit parent's decision to **deny** grandparenting time creates a substantial risk of harm to the child and that he did not **deny**, i.e., refuse or reject all visitation between grandparents and A. According to father, grandparents are thus not eligible for relief under MCL 722.27b and the trial court erred in interpreting the word "deny" in any other manner in order to allow relief.

"Orders concerning grandparenting time must be affirmed on appeal unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Keenan v Dawson*, 275 Mich App 671, 679; 739 NW2d 681 (2007). Issues of statutory interpretation are questions of law. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 309; 645 NW2d 34 (2002). Questions of law are reviewed for clear legal error. *McCain v McCain*, 229 Mich App 123,125; 580 NW2d 485 (1998). "Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013).

The goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Tevis v Amex Assurance Co*, 283 Mich App 76, 81; 770 NW2d 16 (2009), lv den 485 Mich 926 (2009). The rules of statutory construction serve as guides to assist in determining

legislative intent with a greater degree of certainty. *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 313; 683 NW2d 148 (2004). Statutory language should be reasonably construed, keeping in mind the purpose of the statute. *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). Once the intention of the Legislature is discovered, it must prevail over any conflicting rule of statutory construction. *Thompson v Thompson*, 261 Mich App 353, 362 n 2; 683 NW2d 250 (2004).

The first criterion in determining legislative intent is the language of the statute. *Tevis*, 283 Mich App at 81. If the language of the statute is unambiguous, the Legislature is presumed to have intended the meaning clearly expressed, and a court must enforce the statute as written. *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 136; 761 NW2d 470 (2008), lv den 482 Mich 1071 (2008). Every word of a statute is presumed to have some meaning, and this Court must avoid an interpretation that renders any part of the statute surplusage or nugatory. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 132; 807 NW2d 866 (2011). Effect should be given to every sentence, phrase, clause, and word. *Id.* Each word, unless defined, is to be given its plain and ordinary meaning, and the Court may consult a dictionary to determine that meaning. *TMW Enterprises, Inc*, 285 Mich App at 172. Additionally, "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

Another rule of statutory construction is that statutory provisions are not to be read in isolation. *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Rather, to discern the true intent of the Legislature, statutory provisions must be read as a whole. *Id.*

Father's argument is premised upon MCL 722.27b(4) which states, in relevant part, as follows:

> All of the following apply to an action for grandparenting time under [MCL 722.27b(3)]:
>
> * * *
>
> (b) In order to give deference to the decisions of fit parents, it is presumed in a proceeding under this subsection that a fit parent's decision *to deny grandparenting time* does not create a substantial risk of harm to the child's mental, physical, or emotional health. To rebut the presumption created in this subdivision, a grandparent filing a complaint or motion under this section must prove by a preponderance of the evidence that the parent's decision *to deny grandparenting time* creates a substantial risk of harm to the child's mental, physical, or emotional health. If the grandparent does not overcome the presumption, the court shall dismiss the complaint or deny the motion. [Emphasis added.]

However, MCL 722.27b(1) provides:

> A child's grandparent may seek a grandparenting time order under 1 or more of the following circumstances:

-13-

(a) An action for divorce, separate maintenance, or annulment involving the child's parents is pending before the court.

(b) The child's parents are divorced, separated under a judgment of separate maintenance, or have had their marriage annulled.

(c) The child's parent who is a child of the grandparents is deceased.

(d) The child's parents have never been married, they are not residing in the same household, and paternity has been established by the completion of an acknowledgment of parentage under the acknowledgment of parentage act, 1996 PA 305, MCL 722.1001 to 722.1013, by an order of filiation entered under the paternity act, 1956 PA 205, MCL 722.711 to 722.730, or by a determination by a court of competent jurisdiction that the individual is the father of the child.[2]

(e) Except as otherwise provided in [MCL 722.2b(13)], legal custody of the child has been given to a person other than the child's parent, or the child is placed outside of and does not reside in the home of a parent.

(f) In the year preceding the commencement of an action under subsection (3) for grandparenting time, the grandparent provided an established custodial environment for the child as described in [MCL 722.27], whether or not the grandparent had custody under a court order.

Nothing in MCL 722.27b(1), which sets forth when a grandparent may seek a grandparenting time order, requires that there be a denial of grandparenting time before a grandparent may seek a grandparenting time order. In the present case, grandparents brought their motion for grandparenting time pursuant to MCL 722.27b(1)(d) and (f). Father has never disputed that, under MCL 722.27b(1)(d) and (f), grandparents could seek an order for grandparenting time. Thus, under MCL 722.27b(1), grandparents could seek an order of grandparenting time irrespective of whether father had completely denied them all grandparenting time with A. Additionally, MCL 722.27b(4)(b) was included in the grandparenting time statute so that the statute would no longer be constitutionally infirm. See *Keenan*, 275 Mich App at 678-679. To withstand a constitutional challenge under *Troxel* and *DeRose*, a grandparenting time statute must require that a trial court give deference to a fit parent's decision regarding visitation between his or her child and the child's grandparent. See *DeRose*, 469 Mich at 332-333. The Legislature's intent in enacting MCL 722.27b(4)(b), then, was not to set forth requirements for when a grandparent could *seek* an order for grandparenting time (as it had already done in MCL 722.27b(1)), but merely to provide a scheme where a parent's decision regarding visitation was given deference. This is the only logical conclusion

---

[2] MCL 722.27b(2) prohibits a trial court from allowing the parent of a father who never married the child's mother from seeking an order for grandparenting time if the father's paternity has never been established.

when the grandparenting time statute is read as a whole and when the historical context and development of MCL 722.27b(4)(b) is considered.

## V. Expert Testimony

Father argues that the trial court, upon concluding that grandparents' expert, Dr. Fishman's, testimony was not reliable, erred when it considered the statements that A made to Dr. Fishman as evidence. We disagree.

A trial court's decision regarding the admissibility of expert testimony is reviewed for an abuse of discretion, *Surman v Surman*, 277 Mich App 287, 304-305; 745 NW2d 802 (2007), as are all trial court's evidentiary decisions, *Taylor v Kent Radiology, PC*, 286 Mich App 490, 519; 780 NW2d 900 (2009). A trial court abuses its discretion if its decision results in an outcome outside the range of principled outcomes. *Surman*, 277 Mich App at 305.

MRE 702 provides:

> If the Court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under MRE 702, a trial court must act as a gatekeeper to ensure that all expert opinion testimony is reliable. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 783; 685 NW2d 391 (2004). MRE 702 incorporates the standards of reliability that were described in *Daubert*[3] by the United States Supreme Court. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Under *Daubert*, a trial court must ensure that all expert opinion testimony is relevant and reliable. *Id.* at 640. A trial court must determine the reliability of expert opinion testimony before the testimony may be admitted. *Tobin v Providence Hosp*, 244 Mich App 626, 647; 624 NW2d 548 (2001).

The trial court initially qualified Dr. Fishman, a licensed, practicing psychologist, as an expert pursuant to MRE 702, and permitted her to testify as such. Dr. Fishman had been asked by grandparents to offer an expert opinion regarding the effect on A if he was not allowed to see grandparents. To reach an opinion, Dr. Fishman met with grandparents and A on several occasions. In a later order, the trial court disqualified Dr. Fishman as an expert, finding that her methods and opinions did not meet *Daubert* standards and indicated that it would disregard Dr. Fishman's expert opinions.[4] Nonetheless, in finding that there was a substantial risk of harm to

---

[3] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[4] Grandparents make no argument on appeal that the trial court erred in determining that Dr. Fishman's methods and opinions did not meet *Daubert* standards.

A's mental and emotional health if grandparenting time was not granted, the trial court relied heavily on statements that A made to Dr. Fishman pointing out that father had affirmatively waived any hearsay objection to A's statements made to her (which Dr. Fishman testified to and were contained in Dr. Fishman's report that had been admitted into evidence).

Many of A's statements to Dr. Fishman were hearsay; they were out-of-court statements used for the truth of the matter asserted. See MRE 801. Hearsay is not admissible unless it falls within an exception. MRE 802. There has never been a claim by grandparents that any of A's statements to Dr. Fishman fell within a hearsay exception. As indicated by grandparents, however, during the evidentiary hearing concerning Dr. Fishman's testimony, father withdrew any hearsay objection to the admission of A's statements. In considering A's statements, the trial court relied on father's withdrawal of the hearsay objection. Absent the withdrawal of such objection, many of A's statements would have been inadmissible.

Waiver is the voluntary and intentional relinquishment of a known right. *MacInnes v MacInnes*, 260 Mich App 280, 287; 677 NW2d 889 (2004). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation omitted). Father voluntarily and intentionally withdrew his hearsay objection to A's statements. Thus, father cannot now argue on appeal that the trial court erred in considering A's statements because the statements were hearsay and did not fall within a hearsay exception. *Carter*, 462 Mich at 215. Because father withdrew his hearsay objection to A's statements, thereby allowing facts and data on which Dr. Fishman based her opinion to be admitted into evidence, father cannot now claim on appeal that the trial court erred when it considered A's statements.

## VI. Substantial Risk of Harm

Father avers that the trial court's finding that grandparents proved that a denial of grandparenting time would create a substantial risk of harm was against the great weight of the evidence. We disagree.

"Orders concerning grandparenting time must be affirmed on appeal unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Keenan*, 275 Mich App at 679. A trial court's findings of fact are not against the great weight of the evidence unless the evidence clearly preponderates in the opposite direction. *Id.* at 680. A trial court has superior fact-finding ability, and this Court must give deference to a trial court's determination regarding the weight to assign evidence. See *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008).

We first note that the vast majority of father's argument on this issue is premised on his prior argument—that the trial court erred in relying on A's statements to Dr. Fishman. Father makes no argument that, if A's statements to Dr. Fishman were properly considered, the trial court's finding was still against the great weight of the evidence. Given our conclusion that the trial court properly considered A's statements, we could simply affirm the trial court's factual finding regarding a substantial risk of harm without any analysis. However, thoroughness

requires that we point out several salient portions of A's statements to Dr. Fishman that showed, by a preponderance of the evidence, a denial of grandparenting time would create a substantial risk of harm to A's mental, physical, or emotional health.

A told Dr. Fishman that he feels as though he merely exists until the next time he gets to see his grandparents and is very sad about losing his grandparents. A stated that he had grown up referring to his grandparents as "Mom" and "Pop" and that he now felt as though he has lost the only home he had known and that he had been kidnapped due to being required to live with his father. A told Dr. Fishman that he is afraid of not being able to see his grandparents; that sometimes he is homesick and lonely; that grandparents' house feels like home and that is where he belongs and is most welcome; and that, if he could not see grandparents anymore, his life would be horrible, he would be sad, angry, and depressed, and he would not have much to look forward to.

As previously stated, the evidence showed that A lived with his grandparents for numerous years and that the grandparents raised A as their own child. A's statements support that he saw his grandparents as parental figures and certainly show that not only did he want to spend time with them, he would be angry, sad and depressed if he could not. Under these circumstances, the trial court's finding that a denial of grandparenting time would create a substantial risk of harm to A's mental and emotional health did not clearly preponderate against the evidence. *Keenan*, 275 Mich App at 680.

Affirmed.


/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause