*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AYESHA ABBAS,

       Plaintiff-Appellee,

v

ALI ABBAS,

       Defendant-Appellant.

UNPUBLISHED
October 20, 2022

No. 360773
Wayne Circuit Court
LC No. 15-110008-DM

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

In this child-custody dispute, Ali Abbas appeals as of right the trial court's order granting Ayesha Abbas sole legal custody of the parties' two minor children, AM and AL. We affirm.

## I. BACKGROUND

The parties have an acrimonious relationship. Pursuant to the December 2016 consent judgment of divorce (CJOD), the parties had joint legal and physical custody with equal parenting time. But the litigation between the parties did not stop. During the next four years, the trial court was forced to settle numerous disputes between the parties.

The parties' disputes were not limited to the courtroom. According to Ayesha, Ali regularly engaged in aggressive and confrontational behavior during parenting-time exchanges. This behavior was witnessed by the minor children. Ali also denigrated Ayesha to school personnel and medical providers. Ayesha further maintained that Ali attempted to change the children's medical providers and their school without her input or approval.

Ayesha moved to modify physical and legal custody, alleging that she and Ali were unable to coparent. Following a four-day evidentiary hearing, the trial court awarded Ayesha sole legal custody of the children. But the trial court concluded that there was not clear and convincing evidence that it was in the children's best interests modify physical custody. Ali moved the trial court to reconsider its decision, citing a number of facts that he believed the trial court failed to adequately consider. The trial court denied the motion. This appeal followed.

## II. STANDARDS OF REVIEW

Our review of a trial court's decision in a custody-dispute is governed by three different standards. "We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error." *Kubicki v Sharpe,* 306 Mich App 525, 538; 858 NW2d 57 (2014); see also MCL 722.28. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Merecki v Merecki*, 336 Mich App 639, 645; 971 NW2d 659 (2021) (citation omitted). A court abuses its discretion in a custody action when the result "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted). "A trial court commits legal error when it incorrectly chooses, interprets or applies the law." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Ali argues the trial court abused its discretion by awarding Ayesha sole legal custody. We disagree.

MCL 722.27(1)(c) authorizes a court to modify or amend a custody order if there is proper cause or a change of circumstances. *Griffin v Griffin*, 323 Mich App 110, 118-119; 916 NW2d 292 (2018). If that threshold is met, the trial court must determine whether a child has an established custodial environment with one or both parents. *Id*. at 119. In this case, the trial court found that the "degree of continued conflict about important matters" was proper cause to reevaluate custody. It also concluded that the minor children had an established custodial environment with both parents. Ali does not challenge these findings.

Because an established custodial environment existed with both parents, Ayesha was required to show by clear and convincing evidence that modification was in the children's best interests. *Demski v Petlick*, 309 Mich App 404, 446; 873 NW2d 596 (2015). "In determining whether a change of custody is in the best interests of a child, the best-interest factors set forth in MCL 722.23 are the appropriate measurement." *Riemer v Johnson*, 311 Mich App 632, 641; 876 NW2d 279 (2015). Those factors include:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

A trial court has discretion to consider the relative weight of each factor and is not required to give each factor equal weight. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). A trial court must articulate its findings and conclusions regarding each factor. *Riemer,* 311 Mich App at 641. But the trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

After hearing all of the testimony and considering all of the evidence, including interviews with the minor children, the trial court issued an opinion thoroughly weighing each of the best-interest factors. The trial court found that the parties were equal on factors (a), (b), (d), (g), and (h). The court found that Ayesha prevailed on factors (c), (f), (j), (k), and (*l*). And the trial court found that Ali "slightly" prevailed on factor (e).

## A. BEST-INTEREST FACTORS

Ali argues that the trial court's findings with respect to MCL 722.23(c), (f), (j), (k), and (*l*) were against the great weight of the evidence. We disagree.

## 1. FACTOR (C)

Factor (c) requires the trial court to consider "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that this factor strongly favored Ayesha:

> With the assistance of child support, both parties are generally able and motivated to provide the children with basic material needs. The evidence establishes, however, that [Ali]'s deep animosity for [Ayesha] occasionally interferes with [Ali]'s disposition to provide. [Ali] failed to provide school uniforms to [Ayesha] for the children's use as ordered by the Court, resulting in a contempt citation.
>
> [Ali]'s animosity and hostility for [Ayesha] has also affected the children's medical care. [Ali] father has repeatedly caused unnecessary conflict at medical appointments in a variety of ways:
>
> - [Ali] has denigrated [Ayesha] at the children's medical appointments, sometimes while the children were present in the room.
>
> - [Ali] has disrupted appointments with aggressive behavior, in one case causing the parties to be physically separated by medical staff, and in another case causing the cancellation of an appointment after both parties and the children had separately traveled a significant distance across town to get there.
>
> - Rather than prioritizing the quality and continuity of the medical provider, [Ali] has fixated on the location of the medical appointment, vigorously disputing appointments that are far from his residence. In one case, despite having previously agreed to the provider, [Ali] conditioned the use of his medical insurance for the children on the location of the appointment. He then traveled across town to personally argue that his insurance should not be used, causing a cancellation of the appointment after the children had arrived and necessitating a rescheduling of the appointment on another day. [Ali]'s insistence on using providers closer to his residence has resulted in the children having to endure multiple or duplicate appointments and in unilateral changes to the children's medical providers in violation of the principle of joint legal custody. In contrast, the Court notes that [Ayesha] has not objected to having the children's pediatrician, whom they would likely see most often, based in Plymouth, which is much closer to [Ali]'s residence than to [Ayesha]'s residence.
>
> - [Ali] has discussed legal/custody issues with medical providers, inappropriately taking the attention of these individuals off of the parties' children.

- [Ali] has requested questionable "private meetings" with the children's doctors. If, as [Ali] testified, the purpose of such meeting was merely to seek a recommendation for a therapist for the children, such meeting should involve both parents who are joint legal custodians.

Ali contends that this factor favored him. He does not dispute the trial court's factual findings. Instead, he argues that the trial court gave too much weight to evidence against him, while ignoring evidence that supported him. But it was the trial court's prerogative to weigh the evidence and testimony in the manner it did. *Varran v Granneman (On Remand)*, 312 Mich App 591, 624; 880 NW2d 242 (2015) ("A trial court has superior fact-finding ability, and this Court must give deference to a trial court's determination regarding the weight to assign evidence."). "[T]he trial court's failure to address the myriad facts pertaining to a factor does not suggest that the relevant among them were overlooked." *Fletcher v Fletcher*, 447 Mich 871, 883-884; 526 NW2d 889 (1994). It is clear that the trial court weighed the conflicting testimony from the parties in its consideration of this factor. We defer to a trial court's credibility determinations. *Demski*, 309 Mich App at 445. As our Supreme Court has explained:

[T]rial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Fletcher,* 447 Mich 889-890.]

We must affirm a trial court's findings on each best-interest factor "unless the evidence ' "clearly preponderates in the opposite direction." ' " *Id.* at 879, quoting *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959), quoting *Finch v WR Roach, Co*, 299 Mich 703, 713; 1 NW2d 46 (1941). Ali has not demonstrated that the evidence clearly preponderates in the opposite direction.

## 2. FACTOR (F)

Factor (f) requires a trial court to consider "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court found that this factor favored Ayesha:

[Ali]'s behavior towards [Ayesha] in front of the children during parenting time exchanges raises concerns under this factor. [Ayesha] testified credibly that [Ali] has engaged in aggressive, hostile, disparaging behavior towards [Ayesha] at almost every parenting time exchange. Her testimony was corroborated by audio recordings. [Ali] has modeled extremely poor behavior for his daughters to witness. This factor favors [Ayesha].

Ali argues that the trial court relied too heavily on his behavior during the parenting-time exchanges. He insists that the recordings introduced by Ayesha showed rare occurrences, not his regular actions. But Ayesha testified that Ali acted in a similar manner at essentially every parenting-time exchange. Ali primarily attacks the trial court's credibility determinations, which

we will not second-guess. *Demski*, 309 Mich App at 445. Further, to the extent that Ali challenges the weight the trial court gave to his behavior at parenting-time exchanges, we must also defer to the trial court's decision in that regard. *Varran*, 312 Mich App at 624.

Ali also maintains that the trial court ignored evidence of Ayesha's false accusations of sexual abuse, attempts to get Ali deported, and petitions for PPOs when deciding factor (f). This argument lacks merit for a few reasons. First, the trial court referenced Ayesha's "prior allegations of abuse and CPS involvement" in its factual findings. Second, the trial court was not required to address "every piece of evidence entered and argument raised by the parties" in its specific findings as to factor(f). *MacIntyre*, 267 Mich App at 452. Further, these actions occurred in 2015. We defer to the trial court's decision to give more weight to Ali's current behavior, instead of Ayesha's actions from six years ago. *Varran*, 312 Mich App at 624. Accordingly, we find no reason to disturb the trial court's conclusion regarding factor (f).

### 3. FACTOR (J)

Factor (j) requires a trial court to consider "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." The trial court found that this factor weighed in favor of Ayesha:

> The evidence supports [Ayesha]'s assertion that [Ali] consistently disparages [Ayesha] in front of the children at parenting time exchanges. The audio recordings alone demonstrate a palpable disdain that [Ali] displays toward [Ayesha] in front of the children. Modeling such behavior towards the children's mother does not encourage the children to think highly of her or promote a close and healthy relationship between mother and children. Additionally, on multiple occasions [Ali] has violated the parties' parenting time orders, twice being held in contempt for retaining the children during holiday parenting time to which [Ayesha] was entitled. This factor favors [Ayesha].

Ali insists this factor should have strongly favored him, arguing that recordings of the parenting time exchanges were just a "sample size" and that there was no evidence to support Ayesha's testimony that Ali has attempted to influence the children's view of their mother. Once again, he primarily attacks the trial court's credibility determinations, which we will not second-guess. *Demski*, 309 Mich App at 445. Further, it was the trial court's prerogative to determine the weight to assign to evidence. *Varran*, 312 Mich App at 624. Ali has not demonstrated that the evidence clearly preponderates in the opposite direction.

### 4. FACTOR (K)

Ali also challenges the trial court's findings with respect to factor (k), which requires a trial court to consider "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found this factor to favor Ayesha, stating, "The audio recordings that were introduced corroborated [Ayesha]'s testimony that [Ali] has engaged in a pattern of verbal abuse and hostility towards [Ayesha] in front of the children." Ali does not dispute that this factor should favor Ayesha. He simply argues that any weight afforded

to it should have been "negligible" because only eight recordings were introduced and there was no physical abuse. The "trial court need not make its custody determination on the basis of a mathematical calculation and may assign differing weights to the various best-interest factors . . . ." *Berger v Berger,* 277 Mich App 700, 712; 747 NW2d 336 (2008). We defer to the trial court's discretion to consider the relative weight of each factor. *Sinicropi*, 273 Mich App at 184.

## 5. FACTOR (*L*)

Factor (*l*) permits the trial court to weigh "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court found that this factor strongly favored Ayesha:

> In the present case, the severe animosity and lack of trust between the parties has drastically impacted their ability to cooperate with each other in joint decision-making. [Ali] has demonstrated extreme animosity and hostility towards [Ayesha], perhaps because of lingering resentment due to the unsubstantiated yet damaging allegations [Ayesha] made against [Ali] at the beginning of the divorce and other circumstances at that time. [Ali] admits that he has no trust in [Ayesha]. [Ali]'s post-divorce conduct has also enhanced [Ayesha]'s lack of trust in [Ali]. [Ali] has engaged in a pattern of unreasonable behavior. He has failed to follow numerous court orders. He has engaged in bad faith actions such as disparaging [Ayesha] to third parties, seeking to change their child's school after the parties had agreed otherwise, and taking the children to medical providers despite knowing that [Ayesha] had specifically objected. Furthermore, [Ali] has aggressively confronted and disparaged [Ayesha] at parenting time exchanges. The cumulative effect of this behavior is an important factor to consider, and makes it virtually impossible for the parties to reach sustainable agreements on issues involving their children.

Ali challenges the trial court's factual findings for factor (*l*) by attempting to justify his behavior and place blame on Ayesha. We will not second-guess the trial court's credibility determinations, *Demski*, 309 Mich App at 445, and we defer to its determination regarding the weight to assign evidence. *Varran*, 312 Mich App at 624.

## B. LEGAL CUSTODY

When a trial court evaluates whether joint legal custody is appropriate, it must consider the best-interest factors set forth in MCL 722.23, and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(a) and (b). As this Court explained in *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020):

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the

-7-

court has no alternative but to determine which parent shall have sole custody of the children.  [Citation omitted.]

Balancing all of the best-interest factors in this case, the trial court concluded that joint legal custody was "unworkable and inappropriate" and it was in the children's best interests for Ayesha to have sole legal custody.  The trial court found that the evidence reflected "that the parties are unable to engage in the type of sincere and honest dialogue necessary to make important decisions about their children." The record indicates that the parties' animosity affected their ability to agree on important matters such as the children's medical treatment and schooling.  Ali has not demonstrated that any of the trial court's findings were against the great weight of the evidence.  Because these findings were more than adequate to support the trial court's decision awarding Ayesha sole legal custody, we conclude that the court did not abuse its discretion.

Affirmed.


/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel