# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. M. RAY, Minor.

UNPUBLISHED
July 25, 2017

No. 336064
Ionia Circuit Court
Family Division
LC No. 15-000226-NA

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction), (g) (failure to provide proper care and custody), and (j) (reasonable risk of harm to child if returned to parent's care). We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

On June 22, 2015, the Department of Health and Human Services ("DHHS") filed a petition asking the court to take jurisdiction of the child at issue. The petition alleged that the child, who was one-month old at the time, had tested positive for marijuana at birth, and that both parents expressed to a Child Protective Services investigator that they did not want or were unwilling to care for the newborn. DHHS further alleged that the child was currently residing with her paternal aunt, with whom the child had resided since birth, that father[1] admitted to using various drugs, that he had numerous mental health issues, and that he was unemployed and unable to provide for the child. Shortly after the petition was filed, the child was moved to her maternal grandmother's care. On June 30, 2015, a preliminary hearing was held. Father did not attend the hearing. At the hearing, mother waived probable cause, and the court authorized the petition.

---

[1] The petition contained allegations against both father and the child's mother. Following a termination hearing, the court terminated mother's parental rights to the child on August 31, 2016. This termination occurred approximately three months prior to the termination of father's parental rights, and mother is not now a party to this appeal. Consequently, we will focus only on those allegations relative to father.

The first hearing father attended was the September 30, 2015 adjudication hearing. Father attended this hearing from prison via Polycom. At the hearing, the court twice informed father of his right to legal representation, including the right to a court-appointed attorney if he could not afford to retain an attorney. Nevertheless, father waived his right to counsel and pleaded to the basic allegations in the petition, also noting that he had not received treatment for his mental health issues since 2012 and that he was currently incarcerated and unable to care for the child.[2]

The court held a dispositional hearing on October 20, 2015. DHHS referred father to numerous services to address his substance abuse and mental health concerns, as well as a number of other services to address concerns about his employment, housing, physical health, and parenting skills. After several dispositional review hearings, a permanency planning hearing was held on June 22, 2016. At that hearing, the trial court recognized that father had made progress on addressing his mental health concerns but needed to address his other conditions. However, at a permanency planning hearing on September 14, 2016, it was revealed that father had recently tested positive for cocaine and had largely stopped participating in services. The trial court found that it was appropriate for DHHS to initiate termination proceedings at that time. On October 12, 2016, DHHS filed a supplemental petition seeking termination of father's parental rights.

The court held a termination hearing on November 21, 2016. Father participated in the trial by telephone from a rehabilitation facility. Father was in the facility by court order because he tested positive for cocaine in violation of his probation in September 2016 and was given the choice to either spend 11 months in jail or go through a rehabilitation program and spend three years on probation. At the conclusion of the trial, the trial court terminated father's parental rights.

## II. ANALYSIS

On appeal, father contends that his due process rights were violated by not appointing counsel at the outset of the proceedings and by denying his request for an adjournment at the termination hearing to allow him to appear in person. He also takes issue with the trial court's finding of statutory grounds for termination and that it was in the best interests of the child to terminate father's parental rights.[3] We will address each issue in turn.

---

[2] The court also agreed to delete the allegation that father's mental health diagnosis could cause a threat of harm to the child.

[3] Although father appeared to question in his appellate brief the propriety of the trial court's exercise of its jurisdiction in this matter, father's counsel expressly abandoned this issue at oral argument. Counsel's decision was wise, as father no longer has the ability to appeal the issue because collateral attacks on the exercise of jurisdiction are not permitted "where a direct appeal was available," *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993), and father did not pursue an appeal at the time the court assumed jurisdiction. Even if we were to address the

## A. DUE PROCESS

Father raises a number of due process claims, none of which he preserved by raising them in the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999) (An issue is preserved for appeal if it was "raised in and decided by the trial court."). Our review of unpreserved constitutional error is for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). An error is deemed to affect substantial rights if it caused prejudice by affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

### 1. APPOINTMENT OF COUNSEL

Father first argues that the trial court violated his right to due process by not appointing him an attorney at the outset of this case. We disagree.

"In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, DH[H]S policies and procedures, and various federal laws . . . ." *In re Rood*, 483 Mich 73, 93; 763 NW2d 587 (2009). MCR 3.915(B)(1) provides for a respondent's legal assistance in child protective proceedings as follows:

> (a) At respondent's first court appearance, the court shall advise the respondent of the right to retain an attorney to represent the respondent at any hearing conducted pursuant to these rules and that
>
> (*i*) the respondent has the right to a court appointed attorney at any hearing conducted pursuant to these rules, including the preliminary hearing, if the respondent is financially unable to retain an attorney, and,
>
> (*ii*) if the respondent is not represented by an attorney, the respondent may request a court-appointed attorney at any later hearing.
>
> (b) The court shall appoint an attorney to represent the respondent at any hearing, including the preliminary hearing, conducted pursuant to these rules if
>
> (*i*) the respondent requests appointment of an attorney, and

---

matter, we would conclude that it lacks merit. A review of the record reveals that the trial court properly assumed jurisdiction under the factual circumstances in this case.

(*ii*) it appears to the court, following an examination of the record, through written financial statements, or otherwise, that the respondent is financially unable to retain an attorney.

(c) The respondent may waive the right to the assistance of an attorney, except that the court shall not accept the waiver by a respondent who is a minor when a parent, guardian, legal custodian, or guardian ad litem objects to the waiver.

"[A]ffirmative action [is required] on the part of a respondent in order to have an attorney appointed" at a child protective proceeding. See *In re Hall*, 188 Mich App 217, 222; 469 NW2d 56 (1991). Although a respondent has the right to an attorney, a respondent may waive this right. See MCR 3.915(B)(1)(c); see also *In re Hall*, 188 Mich App at 222 (holding that a respondent may waive or relinquish the right to counsel).

Here, the first hearing that father attended was the adjudication hearing on September 30, 2015. At the hearing, the trial court noted that father did not have an attorney, and father stated that he "kind of" knew "how the system work[ed]" and was "willing to waive [his] right to an attorney and proceed by" himself. The trial court then advised father that he had "the right to be represented by a lawyer"; that the court would appoint counsel if father was unable to afford one; and that he had this right throughout the entire case and could ask to have counsel appointed at any time. Father indicated that he understood these rights. Before taking father's plea to certain allegations contained in the petition, the trial court again advised father of his right to an attorney, that if he could not afford an attorney one would be appointed for him, and that he had this right throughout the entire case. Father again indicated that he understood these rights. The trial court also explained the schedule of termination proceedings, the consequences of a guilty plea at an adjudication hearing, and the possibility that allegations that father admitted to at the adjudication hearing could be used against him at a later date in the proceedings. Father stated that he understood.

Father does not argue that the court violated his due-process rights by contravening a particular statute, court rule, agency policy or procedure, or federal law. *In re Rood*, 483 Mich at 93. Rather, he claims that the trial court was required to sua sponte appoint him counsel. Father cites no authority for his position. Moreover, this Court has previously held that a trial court is not required to appoint counsel for a parent in a child custody proceeding on "the court's own motion." See *In re Hall*, 188 Mich App at 221-222. Accordingly, we reject father's claim that the trial court should have appointed him counsel, despite his clearly expressed waiver of his right to legal representation.

The record shows that the trial court clearly informed father of his right to an attorney at the father's first court appearance and that father expressly waived those rights. See *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015) ("Waiver is the voluntary and intentional relinquishment of a known right."). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights[.]" *Id.* (quotation marks and citation omitted). Because father waived representation, there is no error for us to review. See *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009) (holding that "waiver eliminates any error").

Father was eventually appointed counsel following the January 13, 2016 dispositional review hearing. At this hearing, father indicated that he was "perhaps considering" requesting counsel. This was the first affirmative indication that father sought representation. See *In re Hall*, 188 Mich App at 222. We find no error, let alone plain error, in the trial court's prompt appointment of counsel on father's behalf when the father changed his mind about being represented. See MCR 3.915(B)(1)(b). Likewise, we conclude that father suffered no due process violation.

## 2. ADJOURNMENT AND TELEPHONIC PARTICIPATION

Father next argues that the trial court violated his right to due process by denying his emergency motion for adjournment of the termination hearing. We again disagree. We review a trial court's decision regarding whether to adjourn a termination hearing for an abuse of discretion. *In re Utrera*, 281 Mich App at 9. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 629; 853 NW2d 459 (2014) (quotation marks and citation omitted).

"Adjournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary." MCR 3.923(G). "[I]n order for a trial court to find good cause for an adjournment, a legally sufficient or substantial reason must first be shown." *In re Utrera*, 281 Mich App at 11 (quotation marks and citation omitted). Father argues, essentially, that the trial court had good cause for an adjournment because father was unable to attend the hearing in person, and that the adjournment would not have harmed the child. Father argues that his participation by telephone rather than in person did not safeguard his right to participate in the proceedings because he could not interact with his counsel.

The record does not indicate why the trial court denied father's motion for an adjournment. Father filed the emergency motion two business days prior to the scheduled start of the termination hearing. Although the trial court's order denying the motion suggests that there may have been a hearing on the motion, the parties do not mention a hearing in their briefs to this Court, nor does the register of actions reflect such hearing. However, even if we assume for the sake of argument that the trial court abused its discretion by denying father's motion, the court's denial did not result in a due process violation.

Telephonic appearance does not per se violate a parent's right to due process. This Court has recognized that the court rule that "a parent has the right to be present at a termination hearing" does not require that the trial "court secure the physical presence of a parent, but only implies that the [] court shall not deny a parent's right to be present at the hearing." *In re Vasquez*, 199 Mich App 44, 49; 501 NW2d 231 (1993). In *In re Vasquez*, 199 Mich App at 48, this Court rejected the notion "that an incarcerated parent is entitled as a matter of absolute right to be present at the dispositional hearing of a proceeding to terminate parental rights." The Court reasoned instead that, "[i]n light of present-day telecommunications, other means that fall short

of securing the physical presence of a parent are available to ensure that an incarcerated prisoner receives due process at a dispositional hearing." *Id*. at 48-49.[4]

The gravamen of father's claim is that his participation by telephone deprived him of the opportunity to confer with and aid his counsel during the termination hearing. Father asserts generalities about what being physically present would have allowed him to do without identifying any specific actions he would have taken. He argues in his brief to this Court that he could have helped his attorney "prepare for the cross-examination of witnesses, the production of necessary new witnesses, the decision to have the parent testify after conferring together with his counsel, etc." However, he does not indicate how, specifically, his presence would have enhanced counsel's cross-examination of any particular witness, or what testimony required the production of which new witness. Nor does he specify how his presence would have affected his decision to testify. In other words, father provides no specifics regarding how his physical presence would have made a difference. Moreover, nothing in the record indicates that father and his counsel would not have been able to consult privately had either expressed a desire to do so. Further, given the evidence presented against father, including his long history of substance abuse, mental instability, lack of housing, inconsistent employment, and noncompliance with or substantial progress on his case service plan, there appears little chance that father's presence at his counsel's side would have changed the outcome of the hearing. On this record, therefore, we cannot say that the trial court's denial of his motion to adjourn violated father's right to due process.

### 3. REASONABLE SERVICES

Next, father contends that DHHS violated his due process rights by failing to provide reasonable services during the first seven months of this case. We disagree.

---

[4] What due process requires is the application of a three-part balancing test set forth in *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed2d 18 (1976), to determine whether a trial court has to secure the physical presence of an incarcerated parent at the termination hearing. *In re Vasquez*, 199 Mich App at 49. Of note, however, father was not incarcerated. He was in a private rehabilitation facility. In lieu of being incarcerated for having violated his probation by using cocaine, father opted for going through a rehabilitation program and spending three years on probation. The record does not indicate that father was unable to check out of the program temporarily in order to attend the hearing or that he made any effort to clear his attendance with the court that was presiding over his criminal matter.

"Generally, when a child is removed from the parents' custody, the DHHS is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "While the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

The record shows that DHHS made a number of appropriate referrals to assist father in overcoming the barriers to reunification with his child. Father's caseworker testified that, at the start of this case in June 2015, she made numerous referrals to help father address his issue with substance abuse, concerns regarding his housing, his lack of employment, and concerns regarding his mental health. These referrals included a substance abuse evaluation and random drug screens to address his substance abuse; referrals to EightCAP and the Ionia and Belding Housing Commissions to address his housing issue; referrals for a psychological evaluation and individual counseling to address his emotional stability issue; referrals to Manpower and the Path Program through petitioner to address his employment issue; and referrals to individual counseling to address his issue with parenting skills. However, according to father's caseworker, father did not participate in any of these services for the first two months of the case.

Father was incarcerated for most of the remaining five of the initial seven months of this case. Nevertheless, DHHS continued to engage father in reunification efforts. Father's caseworker stated that she remained in contact with father while he was incarcerated, that she planned to refer him to additional services upon his release, and that she was providing father with weekly visitations with his daughter at the jail while he remained incarcerated.

From our review of the record, we conclude that DHHS expended reasonable efforts towards father's reunification with the child. Father argues that, given his constellation of untreated mental-health issues, DHHS should have helped him "set up and take advantage of services" during the initial months of the case. However, father's argument fails to appreciate that, for much of this period, father was dealing with the consequences of his own criminal behavior. Even after father got out of prison, underwent a psychological examination, and engaged in individual counseling, he still failed to address his substance abuse despite the caseworker's referrals, failed to maintain steady employment or take advantage of the caseworker's employment referrals, and failed to secure suitable housing despite the caseworker's housing referrals. The only barrier that father partially addressed during this time was his emotional stability, and he stopped addressing this barrier once he relapsed and tested positive for cocaine in August 2016.

The record shows that DHHS provided father with opportunities to address the issues preventing reunification with the child, including during the initial seven months of the case, in light of the presenting circumstances. Contrary to father's assertion, nothing in the record suggests that DHHS violated his due-process rights by deliberately creating circumstances that would lead to termination of his parental rights. See *In re B & J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008) (DHHS reported the parents as illegal aliens, they were deported, and then DHHS terminated their rights based on their failure to provide proper care and custody of their

children).  Further, based on the caseworker's referrals and attempts to engage father and help him address his barriers to reunification throughout this case, including during the first seven months of the proceedings, the trial court did not plainly err by finding that DHHS made reasonable efforts to rectify the conditions that caused the child's removal.  See *In re HRC*, 286 Mich App at 462.

## B.  STATUTORY GROUNDS

Next, father argues that the trial court erred by finding grounds to terminate his parental rights.  We disagree.  "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence."  *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).  "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made."  *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court terminated father's parental rights under MCL 712A.19b(c)(*i*), (c)(*ii*), (g), and (j).  Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights if, after "182 or more days have elapsed since the issuance of an initial dispositional order," the court finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time."  This Court has previously held that termination was proper under (c)(*i*) where "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication.  *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).  Here, the trial court entered the initial dispositional order on October 20, 2015, and terminated father's parental rights on November 21, 2016.  Thus, "182 or more days" had "elapsed since the issuance of the dispositional order."  MCL 712A.19b(3)(c)(*i*).

The initial conditions that led to adjudication were father's emotional instability and admitted drug use.  To address these issues, after the initial disposition hearing on October 20, 2015, father was referred to counseling and offered a psychological evaluation, random drug screenings, and a substance abuse evaluation.  However, father failed to pursue any of these until February 2016, due largely to his incarceration prior to that time.

In February 2016, father had a psychological evaluation performed, which revealed that father suffered from bipolar disorder, antisocial personality disorder, cannabis use disorder, and two different stimulant disorders.  Father took some steps to address his bipolar and antisocial personality disorders: he participated in counseling, and prior to termination he had attended 12 sessions with a therapist.  However, father never took any steps to address his substance abuse issue: he never pursued a substance abuse evaluation or a random drug screen, and he missed two substance abuse intake appointments that his caseworker scheduled for him.  Moreover, father tested positive for marijuana in March 2016.  Father told his caseworker that it was due to his involvement in a Central Michigan Enforcement Team (CMET) operation, but a deputy with CMET testified that father had not worked with CMET since April 2014.

Father's refusal to address his substance abuse issue, despite his diagnosis of cannabis and stimulant use disorders, eventually affected father's willingness to address his emotional stability.  Father tested positive for cocaine in August 2016, clearly showing that substance abuse

was still an issue, and he testified at trial that he started missing his appointments with his therapist after he relapsed because he was afraid to admit to her that he relapsed.

After this positive test in August 2016, father never appropriately addressed his substance abuse issue. As a result, in September 2016, he tested positive for cocaine a second time. This test was in violation of his probation, and father was given the choice to either enroll in a rehabilitation center with three years of probation or spend 11 months in jail. Father chose the former and enrolled in rehab on October 21, 2016. Thus, although substance abuse was identified as a barrier at father's dispositional hearing in October 20, 2015, father took no steps to address this barrier until a year later, on October 21, 2016, and then only to avoid incarceration. Even though father took some steps to address his substance abuse and emotional stability issues, those conditions remained at the time of termination. See MCL 712A.19b(3)(c)(*i*).

It was unlikely that father would be able to rectify these conditions in a reasonable amount of time given the child's age. See MCL 712A.19b(3)(c)(*i*). The psychologist that performed father's psychological evaluation testified that she believed it would take father 6 to 12 months of treatment to adequately address his substance abuse barrier, and that it would take 12 months of medicating to be sure that his bipolar disorder was not a barrier to his ability to parent the child. Father also recognized that he would require at least six months before he was able to care for the child. Further, given father's lack of substantial progress in addressing either of these issues in the 13 months since his disposition, it does not appear likely that he would be able to rectify these conditions in a reasonable time.

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App at 461.

## C. BEST INTERESTS

Lastly, father argues that the trial court clearly erred by finding that termination was in the child's best interests. We disagree. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance*, 306 Mich App at 723.

The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 356-357, and may consider such factors as

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. [*In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted).]

Other considerations include "the parent's compliance with his or her case service plan . . . and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider the length of time the child was in foster care or placed with relatives, and the likelihood that "the child could be returned to her parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249.

Based on our review of the record, we conclude that the trial court did not err in ruling that termination was in the child's best interests. Father failed to comply with almost every aspect of his case service plan and made only minimal progress in the areas in which he did comply. Father was given numerous referrals to assist him in addressing his issues, but he routinely refused to take advantage of the vast majority of those services. As a result, at the termination trial, which was 13 months after father's initial disposition, father had not substantially addressed any of the issues identified at disposition.

Additionally, there was no reasonable likelihood that the child would be able to be placed with father within a reasonable time. On the day of the termination trial, father admitted that he was not currently capable of caring for the child. Father estimated that he would require an additional six months before he could care for her. This six-month minimum that the child would have to wait to be placed with father was not reasonable given the time that the child had already been in foster care and the unlikelihood that father would be able to adequately address his issues in that six-month time given his history.

Further, the child's placement provided her with the permanence and stability that she needed. Father was unable to provide the child with permanence and stability due to his stay at a rehabilitation center. Once father left his rehabilitation program, he still had to obtain suitable housing, find stable employment, and address his substance abuse and emotional stability issues. In contrast, for the majority of this 17-month case, the child had been in a stable placement with her maternal grandmother. There is no indication from the trial court record that there was any problem with this placement; it appeared able to appropriately and adequately provide for all of the child's needs. Moreover, the maternal grandmother was willing to adopt the child, providing her with the permanence and stability that she needed.

On appeal, father argues that the trial court erred by finding that termination was in the child's best interests because the child was in a relative placement. However, the trial court recognized that the child was in a relative placement at the time of termination, but concluded that, given the child's age, her need for permanency, and the fact that guardianship was not recommended by DHHS, termination was in the child's best interests. Given that the trial court weighed the options available in a relative placement besides termination and concluded that the only way to ensure permanence for the child was termination, we are not definitely and firmly convinced that the trial court erred by finding that termination was in the child's best interests in light of the relative placement. *In re LaFrance*, 306 Mich App at 723.

For the reasons stated above, we conclude that the trial court did not clearly err in finding that clear and convincing evidence supported at least one statutory ground for termination, and in finding that a preponderance of the evidence indicated that termination was in the child's best interests, and we affirm the trial court's order terminating father's parental rights.

Affirmed.


/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering