*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAUREN MICHELLE BROWN,

Plaintiff-Appellee,

v

LEON JERMAINE WALKER,

Defendant-Appellant.

UNPUBLISHED
September 5, 2019

No. 345917
Wayne Circuit Court
Family Division
LC No. 17-111471-DC

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right from an order of custody, parenting time, and child support. We affirm.

## I. FACTUAL BACKGROUND

This action arises out of a custody dispute between defendant and plaintiff, who is defendant's former girlfriend. Plaintiff and defendant have a son, MW, who was born in 2013. Plaintiff and defendant lived in defendant's house in Rochester Hills, Michigan, when MW was born, but soon moved into plaintiff's house in Grosse Pointe Woods, Michigan. However, plaintiff began to feel that her relationship with defendant was deteriorating, and observed that he exhibited "[c]ontrolling, manipulative" behavior toward her. After determining that they could not reconcile their differences, plaintiff and defendant separated in November 2016. Defendant lived with his brother and mother for brief periods of time after his relationship with plaintiff ended, and then rented a home in Bloomfield Hills, Michigan.

From November 2016 until September 2017, the parties adhered to an informal agreement to share legal and physical custody of MW. Defendant shared a weekly "split schedule" with plaintiff, wherein each party had physical custody of MW for part of the week. The parties jointly made decisions regarding MW's schooling, medical care, and living arrangements. During the summer months, the parties changed their informal parenting time agreement so that plaintiff and defendant would each have almost a full week of parenting time with MW on an alternating basis. When MW was enrolled in preschool in the fall of 2017,

defendant demanded that they maintain their summer parenting time schedule, but plaintiff did not agree. The parties experienced a breakdown in the amicable relationship they had regarding custody and parenting time, which led plaintiff to file a complaint for custody, parenting time, and child support. As a result of the child custody action, the trial court entered an order granting plaintiff and defendant joint legal custody of MW, and granting plaintiff sole physical custody of MW. The trial court also ordered a parenting time schedule that allowed both parties an equal amount of parenting time. This appeal followed.

## II. CHILD CUSTODY – STANDARDS OF PROOF

Defendant argues that the trial court erred by stating that he sought sole legal and physical custody, and consequently erred by holding him to a clear and convincing evidence standard of proof. Defendant further argues that the trial court erred by failing to properly evaluate whether joint physical custody should be granted to the parties. We agree that the trial court erred by stating that defendant sought sole legal and physical custody, but do not agree that the trial court applied an incorrect standard of proof. Further, we agree that the trial court did not properly consider whether to grant joint physical custody, but find that the error was harmless.

Generally, this Court reviews " 'factual findings on matters such as the established custodial environment and the best-interest factors' " using the great weight of the evidence standard. *Griffin v Griffin*, 323 Mich App 110, 130; 916 NW2d 292 (2018) (citation omitted). The trial court's factual findings " 'will be affirmed unless the evidence clearly preponderates in the opposite direction.' " *Id*. (citation omitted). The trial court's "discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion," and questions of law are reviewed for clear legal error. *Id*. (citation omitted). "Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Varran v Granneman*, 312 Mich App 591, 617; 880 NW2d 242 (2015) (quotation marks and citation omitted). Generally, [a]n abuse of discretion occurs when a trial court chooses an outcome falling outside the range of principled outcomes." *Rettig v Rettig*, 322 Mich App 750, 754; 912 NW2d 877 (2018). However, in child custody cases, an abuse of discretion "exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Elahham v Al-Jabban*, 319 Mich App 112, 126; 899 NW2d 768 (2017). Additionally, "[f]indings of fact, such as the trial court's findings on the statutory best-interest factors, are reviewed under the 'great weight of the evidence' standard." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011).

However, defendant never argued that the trial court failed to consider joint physical custody entirely by raising the issue before the trial court. *Mitchell v Mitchell*, 296 Mich App 513, 521; 823 NW2d 153 (2012). Accordingly, the portion of defendant's issue pertaining to whether the trial court properly considered joint physical custody is unpreserved, and this Court's review is for plain error affecting defendant's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). In general, an error affects an individual's substantial rights if it "cause[s] prejudice, i.e., it affect[s] the outcome of the

proceedings." *In re Utrera*, 281 Mich App at 9. A judgment or order may be reversed if "the plain, forfeited error . . . seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings . . . ." *Id*.

Defendant contends that he did not seek sole legal and physical custody of MW; rather, he sought joint legal and physical custody. In his countercomplaint, defendant sought sole legal and physical custody of MW, but later stated on the record that he was seeking joint legal and physical custody of MW. Defendant also informed the trial court that he was seeking joint legal and physical custody in a written closing argument submitted to the court. Plaintiff does not dispute that the trial court erred by stating in its opinion that defendant was seeking sole physical and legal custody of MW.

Before making a custody decision, the trial court must first make a threshold determination regarding whether an established custodial environment exists. *Pierron v Pierron*, 282 Mich App 222, 244; 765 NW2d 345 (2009). "[A] trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). An established custodial environment is defined as

> a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance, and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence. [*Pierron*, 282 Mich App at 244, quoting *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981).]

If a custody modification changes the child's established custodial environment, "the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). However, "[i]f the proposed change does not change the custodial environment . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

The trial court found that an established custodial environment existed with both parties. With regard to the applicable burden of proof, the trial court stated as follows:

> Therefore, in order for plaintiff to prevail for joint legal custody, she must meet the preponderance of the evidence standard of proof. To prevail on sole physical custody, [plaintiff] must meet the clear and convincing standard of proof.
>
> In order for defendant to prevail for sole legal and physical custody, he must meet the clear and convincing standard of proof.

The trial court's explanation of the burden of proof is overcomplicated. The determination of the applicable burden of proof is contingent on the presence or absence of an established custodial environment, not on the individual nuances of a party's request for joint or sole custody. *Griffin*, 323 Mich App at 119. Generally, if an established custodial environment does not exist with either party, " 'the trial court may change custody if it finds, by a preponderance of the evidence,

that the change would be in the child's best interests.' " *Id*. (citation omitted). However, " 'where an established custodial environment . . . exist[s], a court is not to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.' " *Id*. (citation omitted). The trial court inarticulately explained the applicable burden of proof by differentiating between the burdens of proof applicable to the parties' requests for physical and legal custody. However, even if the trial court misspoke, a review of the trial court's opinion indicates that it did not err in establishing the burden of proof.

As previously stated, a party's burden of proof is determined on the basis of the existence of an established custodial environment and whether the party's requested change alters the established custodial environment. *Griffin*, 323 Mich App at 119. If an established custodial environment exists, a court may not change the established custodial environment unless clear and convincing evidence shows that it is in the child's best interests. *Id*. The parties do not dispute the trial court's findings regarding the established custodial environment; rather, defendant merely argues that, because the trial court made an incorrect factual finding by stating that he sought sole legal and physical custody of MW, it consequently held him to an incorrect standard of proof. The parties do not dispute the fact that the trial court erred by stating that defendant sought sole legal and physical custody of MW. However, the error does not require reversal because the trial court held plaintiff, whose request for sole physical custody would change the established custodial environment, to the applicable heightened standard of proof to be used when a change in custody results in a change in the established custodial environment.

Specifically, with regard to legal custody, defendant states that he and plaintiff both sought *joint* legal custody of MW, but that the trial court incorrectly stated that defendant sought *sole* legal custody and erroneously held him to a clear and convincing evidence standard of proof. Regardless of whether the trial court erred by analyzing the issue using the incorrect assumption that defendant wanted sole legal custody, the trial court ultimately granted the parties joint legal custody, which is the outcome defendant sought to obtain. Thus, any error on the trial court's part is moot. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Cassidy v Cassidy*, 318 Mich App 463, 478; 899 NW2d 65 (2017) (quotation marks and citation omitted). Because the trial court granted joint legal custody, which was defendant's desired outcome, this Court cannot provide defendant with a remedy for any perceived error pertaining to the trial court's evaluation of the issue of legal custody.

Second, with regard to physical custody, defendant states that he sought joint physical custody of MW, but was erroneously held to a clear and convincing evidence standard of proof instead of a preponderance of the evidence standard of proof because the trial court mistakenly believed that he wanted sole physical custody of MW. Defendant claims that the trial court committed error requiring reversal by finding that he had to prove, by clear and convincing evidence, that granting him sole physical custody of MW was in MW's best interests. As previously stated, the evaluation of the issue of custody is contingent on whether, and with whom, an established custodial environment exists. *Griffin*, 323 Mich App at 119. Although the trial court's analysis of defendant's claim was erroneously premised on the assumption that he sought sole physical custody, defendant cannot succeed in demonstrating that his claim for joint

physical custody should have prevailed on the basis of the lesser preponderance of the evidence standard of proof.

Because the trial court found that an established custodial environment existed with both parties and acknowledged that plaintiff's request for sole physical custody would change the established custodial environment, it held plaintiff to the appropriate clear and convincing evidence standard of proof. The clear and convincing evidence standard is a "heightened standard of proof," and thus, it is higher than the preponderance of the evidence standard. *Demski v Petlick*, 309 Mich App 404, 472; 873 NW2d 596 (2015). The trial court found that plaintiff showed by clear and convincing evidence that granting her request for sole physical custody was in MW's best interests. In light of the fact that the trial court found that plaintiff met the heightened burden to show that a change in the established custodial environment was in MW's best interests, defendant cannot succeed in demonstrating that his claim for joint physical custody should prevail on the basis of the *lesser* preponderance of the evidence standard of proof.

Defendant next argues that the trial court committed error requiring reversal because, by assuming that he and plaintiff both sought sole physical custody of MW, it entirely failed to consider whether the parties should share joint custody of MW. In support of this argument, defendant directs this Court to MCL 722.26a(1), which states that, "[i]n custody disputes between parents, the parents shall be advised of joint custody. At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request." MCL 722.26a(1). The term "joint custody" may refer to joint legal custody, joint physical custody, or both. *Dailey*, 291 Mich App at 670. Under MCL 722.26a(1), "joint custody" is defined as

an order of the court in which 1 or both of the following is specified:

(a) That the child shall reside alternately for specific periods with each of the parents.

(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [MCL 722.26a(7).]

Defendant does not argue that the trial court failed to inform the parties that joint custody was available. Further, defendant does not argue that the trial court failed to properly consider joint legal custody, given that defendant's request for joint legal custody was considered and granted by the trial court. Instead, defendant maintains that the trial court failed to consider joint physical custody because it believed both parties requested sole physical custody.

A review of the record indicates that the trial court did not consider joint physical custody an option because it assumed that both parties requested sole physical custody. Thus, defendant correctly states that the trial court erred by failing to consider joint physical custody as an option under MCL 722.26a(1). However, any error committed by the trial court was harmless. See *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994) (stating that, "upon a finding of error, appellate courts should remand to the trial court unless the error was harmless."). Even if this Court remanded to the trial court and directed the trial court to evaluate defendant's request

for joint physical custody, defendant would not succeed. The trial court believed it was required to evaluate plaintiff's and defendant's claims for sole physical custody, and it summarily concluded that plaintiff, not defendant, met the burden to prove, under the heightened clear and convincing evidence standard, that granting her request for sole physical custody was in MW's best interests. It is telling that, even though the trial court mistakenly believed that defendant was also seeking sole physical custody, it found that awarding physical custody to defendant would *not* be in MW's best interests, and granted plaintiff's competing request for sole physical custody. If the trial court applied the clear and convincing standard to plaintiff's request for sole custody again on remand, defendant would fail to show, by the lower preponderance of the evidence standard, that granting joint physical custody to the parties would be in MW's best interests. Accordingly, although the trial court failed to properly consider granting joint physical custody, the error was harmless.

## III. BEST INTERESTS, PARENTING TIME, AND SCHOOL CHOICE

Defendant argues that the trial court's factual findings with regard to the best-interest factors were against the great weight of the evidence, and that the trial court abused its discretion in changing MW's established custodial environment, making its rulings regarding MW's schooling, and establishing a parenting time schedule. We disagree.

This Court reviews " 'factual findings on matters such as the established custodial environment and the best-interest factors' " under the great weight of the evidence standard. *Griffin*, 323 Mich App at 130 (citation omitted). This Court will affirm factual findings made by the trial court " 'unless the evidence clearly preponderates in the opposite direction.' " *Id.* (citation omitted). Discretionary rulings, including a trial court's "determination on the issue of custody, are reviewed for an abuse of discretion," and questions of law are reviewed for clear legal error. *Id.* (citation omitted). "Clear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Varran*, 312 Mich App at 617 (quotation marks and citation omitted). Generally, an "abuse of discretion occurs when a trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). In child custody cases, an abuse of discretion occurs "when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Elahham*, 319 Mich App at 126. "Findings of fact, such as the trial court's findings on the statutory best-interest factors, are reviewed under the 'great weight of the evidence' standard." *Dailey*, 291 Mich App at 664.

## 1. BEST INTERESTS

Defendant first contends that the trial court's factual findings regarding the best-interest factors were against the great weight of the evidence, and thus, that the trial court abused its discretion by awarding sole physical custody of the children to plaintiff. The trial court found that an established custodial environment existed with both parents, and held plaintiff to a clear and convincing evidence standard of proof regarding the issue of physical custody because plaintiff sought to change the established custodial environment by requesting sole physical custody. "[W]hen a modification of custody would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is

in the child's best interest." *Phillips v Jordan*, 241 Mich App 17, 25; 614 NW2d 183 (2000). Thus, plaintiff was required to prove by clear and convincing evidence that granting her request for sole physical custody was in MW's best interests.

Whether a particular custody arrangement is in a child's best interests is determined using the factors set forth in MCL 722.23. A child's best interests are determined by evaluating the "sum total of the . . . factors [under MCL 722.23] to be considered, evaluated, and determined by the court . . . ." MCL 722.23. The best-interest factors are as follows:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

Defendant takes exception to the trial court's findings with regard to factors (b), (c), (d), (e), (f), (g), (h), and (l).

Defendant contends that he should have been favored under factor (b), concerning the parties' ability to give the child love and guidance, MCL 722.23(b), because he was more proactive regarding treatment for a speech impediment suffered by MW. The trial court stated that "[b]oth parents show the capacity and disposition to provide love[,] affection and guidance to [MW]," and noted that both parties were "interested and concerned about [MW's] education and speech delays." Plaintiff testified that MW's speech impediment was resolved after MW attended a speech and language therapy program through the Grosse Pointe School District. Plaintiff presented evidence that MW was no longer eligible to participate in speech and language therapy because his speech issues were resolved.

Conversely, defendant persistently claimed that MW's speech impediment was not resolved and argued that MW should be placed in the Bloomfield Hills School District, where he could participate in a different speech and language therapy program. However, defendant presented no evidence to substantiate his claim that MW still had a debilitating speech impediment, or that plaintiff was ignoring MW's speech impediment. Thus, defendant's argument that he was more proactive than plaintiff regarding MW's speech impediment lacks merit. Contrary to defendant's assertion, the record indicates that plaintiff was the party who paid for MW's speech evaluations and oversaw the issue of treating MW's speech impediment, not defendant. Overall, the record suggests that both parents are interested in and involved with MW's education, and thus, the trial court's findings were not against the great weight of the evidence.

The trial court weighed factor (c), concerning the parties "capacity to provide the children with food, clothing, and medical care," MCL 722.23(c), in favor of plaintiff. The trial court observed that plaintiff had been consistently employed as a teacher for the Grosse Pointe School District since MW was born and that she primarily provided for MW's medical care and material needs. The trial court further found that defendant had not held a consistent job and was frequently unemployed. The trial court also found that defendant was still in a period of probationary employment at the time of trial and that defendant never "provided financially for [MW] otherwise []or . . . paid any child support to plaintiff. The trial court's findings of fact were not against the great weight of the evidence. The record indicates that defendant was consistently unemployed or underemployed, and only began working a steady job after a period of unemployment. The record also indicates that defendant was a probationary employee and was not guaranteed a permanent job after the probationary period ended. Further, the record reflects that plaintiff was consistently employed as a teacher and that she was responsible for MW's material and medical needs.

Additionally, with regard to factor (c), defendant primarily takes issue with the trial court's findings regarding his failure to "pay any child support to plaintiff." Defendant correctly argues that, during the child custody proceedings, there was not a child support order requiring him to pay plaintiff child support for MW. However, it is not clear that the trial court meant "child support" in the traditional sense of the word. When taken in context, it is clear that the trial court was merely attempting to articulate that defendant did not provide substantial financial

support for MW, which is supported by the record. Defendant also contends that the trial court overlooked the fact that he was temporarily disabled in a car accident and could not work for the better part of a year. However, although the record indicates that defendant was in a car accident, there is no evidence that he could not work. Further, defendant stated that he was not disabled. Overall, the trial court's findings under factor (c) were not against the great weight of the evidence.

Defendant next argues that the trial court's findings under factor (d), which concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), was improperly weighed in favor of plaintiff. Defendant contends that the trial court made an inappropriate finding of fact by concluding that he was frequently "transient" and would not be able to pay his rent if he lost his job or was not offered full-time employment by his employer after the probationary period ended. The trial court found that "[d]efendant has had a long period of transience since he moved out . . . . He has recently rented a home that he can only afford if he continues past his probationary employment status." The record indicated that defendant lived with his brother and his mother after moving out of plaintiff's house and was not guaranteed to keep his job after the probationary period. Defendant's rent for his house in Bloomfield Hills, Michigan, was $1,775 per month. If defendant does not maintain steady employment or keep his job, he will not be able to afford the high costs attached to his rental home. Thus, the trial court's findings were not against the great weight of the evidence.

Defendant also contends that the trial court failed to take into consideration that plaintiff allowed her father, who was convicted of criminal sexual conduct, to be around MW, and that plaintiff hosted "sex toy parties" in the home where sex toys were sold. Defendant contends that plaintiff's father is a "frequent and constant" presence in MW's life, but is subject to a court order that prohibits him from being near children. However, defendant produced no evidence of the alleged court order at trial and would not conclusively testify that he believed plaintiff's father would harm MW. Further, although defendant contended that plaintiff left MW alone with her father, there was no evidence to substantiate this claim, nor was there evidence to substantiate the claim that plaintiff's father was frequently or constantly exposed to MW. With regard to the alleged sex toy parties, the record indicates that plaintiff did take a temporary side job as a host for an unnamed adult-themed marketing service, but did so when MW was an infant. There was no evidence that plaintiff continued in this line of work for more than a short period of time. Given that defendant produced no supporting evidence for his claims, the trial court's findings were not against the great weight of the evidence.

With regard to factor (e), which concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes," MCL 722.23(e), defendant argues that the factor should have been weighed in his favor. The trial court found the parties were equal because both parties lived in stable homes near extended family. Defendant again argues that plaintiff exposed MW to dangerous situations by allowing her father to be near MW. As stated above, there was no evidence presented to support this claim. Defendant also argues that the trial court failed to consider that plaintiff exposed MW to a new boyfriend and had a friend and her children staying in the house for a period of time. The record reflects that plaintiff did have a new boyfriend for two months and that he stayed at plaintiff's house on a single occasion

because he lived in Ohio. The record further reflects that plaintiff allowed her friend and her three children to temporarily stay in the home after plaintiff's friend left her abusive boyfriend. Plaintiff explained that her friend stayed a maximum of three nights per week over the course of two months while waiting to move into a rental home.

In *Ireland v Smith*, 451 Mich 457; 547 NW2d 686 (1996), our Supreme Court characterized certain criteria to be considered when evaluating factor (e) as follows:

> The stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions . . . . [E]very situation needs to be examined individually. [*Id*. at 465 n 9.]

It is unclear if the trial court considered whether allowing a boyfriend to stay in the home for one night caused a major disruption, or whether the fact that plaintiff allowed her friend and her friend's children to stay in the home for an extended period of time could have disrupted the stability of the home. In child custody cases, "the circuit judge is to give careful consideration to the whole situation." *Id*. at 466. It is not clear that the trial court did so herein. Although the trial court's findings under factor (e) were not against the great weight of the evidence, given that both parties offered stable home environments to MW, they were inadequate overall. However, even if the trial court erred by failing to note whether it considered the presence of plaintiff's former boyfriend and friends in the home, the best-interest factors still weigh in favor of the trial court's decision to grant plaintiff's request for joint legal custody and sole physical custody.

With regard to factor (f), concerning the parties' moral fitness, MCL 722.23(f), defendant contends that the trial court improperly found that he struggled to get a job in his chosen field because he was convicted of committing computer-related crimes on two separate occasions. The trial court found that defendant "was convicted of a computer crime that has affected his ability to hold a steady job in his chosen profession" in the information technology field. Defendant testified that he "had computer crime charges on [his] record," which cost him several job opportunities. But, according to defendant's testimony, the charges were ultimately dismissed. While the trial court erred in concluding that defendant was convicted, we are persuaded that the error is harmless. That is, even in light of the fact that the charges were dismissed, the record still supports the trial court's decision and we are not persuaded that this was a determinative factor in the court's decision.

Defendant also contends that the trial court improperly analyzed the fact that he took MW from school without telling plaintiff, and argues that the trial court should have considered that defendant only did so because plaintiff refused to allow him to see MW. However, there is no evidence that plaintiff actually refused to allow defendant to see MW; rather, she merely threatened that she would keep MW away from defendant until the parties went to court. Further, plaintiff threatened not to allow defendant to see MW because defendant refused to bring MW back to plaintiff for her scheduled parenting time. In response, plaintiff told defendant, "[MW]'s not coming back with you if you're not gonna [sic] give him back to me when he's supposed to be back with me." Immediately after returning MW to plaintiff,

defendant removed MW from school without informing plaintiff and did not give MW back until court-ordered to do so. Both parties displayed lapses in moral judgment regarding parenting MW, as acknowledged by the trial court. Accordingly, the trial court's findings were not against the great weight of the evidence.

Defendant next argues that factor (g), concerning the parties' mental and physical health, MCL 722.23(g), should have been weighed slightly in his favor. The trial court found that both parties were "fit and healthy," and weighed the factor equally in favor of plaintiff and defendant. Defendant contends that he should have been favored because he recovered from a temporary disability caused by a car accident, whereas plaintiff was taking medication for high blood pressure and anxiety. The record states that defendant was injured in a car accident, but was not disabled at the time of trial. The record further states that plaintiff was taking medication for high blood pressure and anxiety.

Defendant argues that, because plaintiff's illnesses began after MW was born, the trial court should have inferred that her conditions would be alleviated by sharing the burdens of parenting with him. Defendant cites to *In re Contempt of Henry*, 282 Mich App 656, 677; 765 NW2d 44 (2009), and quotes a portion of *Henry* in which this Court discusses "reasonable inferences that arise from . . . evidence . . . ." *Id*. However, defendant does not provide proof that there is a correlation between motherhood and plaintiff's high blood pressure and anxiety, nor does he explain how sharing the "burdens of parenthood" with him would remedy either issue. Overall, it is apparent that neither party has any major mental or physical health issues. Accordingly, the trial court's findings were not against the great weight of the evidence.

Factor (h), concerning the child's home, school, and community record, MCL 722.23(h), was weighed in plaintiff's favor. The trial court found that MW was in a preschool class and had participated in a speech and language program. The trial court further found that MW was "thriving in his school environment." The trial court also found that, although defendant wanted to move MW to the Bloomfield Hills School District, no evidence supported his opinion that the Bloomfield Hills School District was superior to MW's current placement in the Grosse Pointe School District. Defendant argues that the trial court should have weighed the factor equally between the parties because MW was too young to have developed a home, school, and community record. Defendant contended that MW had not started "actual schooling," and that the issue of his speech and language therapy remained outstanding. However, the record indicates that MW was four years old and attended a speech and language program and a preschool program. Although MW was young at the time of trial, it is obvious that he was beginning to develop the home, community, and school record contemplated under factor (h). Defendant does not explain why MW's preschool program does not constitute "actual schooling." Moreover, although defendant insisted that MW's speech impediment persisted, he presented no evidence that this was true. Overall, the trial court's findings were supported by the great weight of the evidence.

Defendant's final argument with regard to the best-interest factors is that the trial court erred by failing to address factor (l), which generally concerns "[a]ny other factor considered by the court to be relevant to a particular child custody dispute," MCL 722.23(l). Defendant argues that the trial court should have considered the fact that MW is biracial and would benefit from a

joint physical custody arrangement so that defendant could educate him regarding his cultural heritage. The trial court appeared to believe that any factors relevant to its custody determination were addressed under factors (a) through (k), and did not address any additional factors under factor (l). The issues that may be considered under factor (l) are within the trial court's discretion. See *Terry v Affum*, 237 Mich App 522, 537 n 9; 603 NW2d 788 (1999) ("The court should consider those factors it finds relevant to this situation and should freely exercise its discretion pursuant to factor *l* . . . ."). Thus, the trial court was not required to consider that MW was biracial. Moreover, defendant neglects to mention that he was granted parenting time with MW, and will have the opportunity to bond with MW and educate him about their shared cultural heritage. Accordingly, the trial court did not err by choosing not to address any additional issues under factor (l), and the great weight of the evidence generally supported its decision to award joint legal custody to the parties and sole physical custody to plaintiff.

Defendant next returns to his argument that the trial court failed to meet the statutory requirement to consider joint physical custody under MCL 722.26a. Defendant makes the same argument that he made above. As previously stated, although the trial court erred by failing to discuss joint physical custody, the error was harmless because the trial court found that plaintiff met her burden of proof, under the heightened clear and convincing evidence standard, that granting her request for sole physical custody was in MW's best interests.

Defendant also argues that plaintiff failed to articulate why she wanted sole physical custody. However, defendant proffers no statute or caselaw supporting the notion that plaintiff was required to give an explicit reason for requesting sole physical custody that would sufficiently satisfy defendant. Defendant's failure to cite to legal authority in support of his argument suggests that the argument has been abandoned on appeal. See *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008) (stating that "[w]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned."). Further, the trial court was provided with ample testimony and evidence to allow it to determine whether a change of physical custody, and thus, a change of MW's established custodial environment, was in MW's best interests. Moreover, the trial court properly analyzed the applicable best-interest factors and concluded that the change of custody was in MW's best interests.

## 2. CHANGE TO ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant also reiterates his argument that there was insufficient evidence to show that a change to MW's established custodial environment, brought about by a change in physical custody, was in MW's best interests. However, as previously stated, the trial court found that four of the best-interest factors weighed in favor of plaintiff, and another four weighed equally between the parties. The trial court did not find that any of the best-interest factors weighed in defendant's favor. However, it bears noting that "the trial court need not make its custody determination on the basis of a mathematical calculation and may assign differing weights to the various best-interest factors." *Berger*, 277 Mich App at 712. As discussed herein, the trial court's findings under the best-interest factors were supported by the great weight of the evidence. Accordingly, defendant's argument lacks merit.

3. PARENTING TIME

Defendant next argues that the trial court abused its discretion in determining parenting time. Defendant first contends that the parenting time ordered by the trial court was an abuse of discretion because it does not promote a strong relationship between defendant and MW. Defendant directs this Court to MCL 722.27a(1), which states that parenting time "shall be granted to a parent in a frequency, duration, and type reasonably calculated" to fulfill this function. MCL 722.27a(1). However, defendant does not further elaborate on this argument. The parenting time schedule set forth by the trial court gives both parties an equal amount of parenting time. Defendant makes no effort to explain how such a parenting time schedule is insufficient, or how it will hinder his efforts to foster a strong relationship with MW. Because defendant has proffered no evidence to show that the parenting time schedule negatively impacts his ability to foster a strong relationship with MW, this portion of defendant's argument lacks merit.

Defendant next contends that the trial court abdicated its responsibility to use its discretion to craft a parenting time schedule because the parenting time schedule it set forth for the parties in its opinion was essentially the same as the schedule set forth in the temporary parenting time order that was entered while the child custody proceedings were pending. Defendant's argument lacks factual support. The original parenting time order states, in pertinent part:

> 1. Plaintiff will have primary physical custody of the parties' minor child, [MW], who resides with plaintiff.
>
> 2. Defendant will have parenting time with . . . [MW] every other week on Thursday at 4:30 p.m. to Sunday at 4:30 p.m. . . . with exchanges of [MW] taking place at the Royal Oak Police Station. There is a 15 minute grace period on exchange times to allow for traffic and emergencies.
>
> 3. Defendant shall return . . . [MW] to [p]laintiff immediately and no later than 6:00 p.m. today, December 7, 2017 and failure to do so will result in a bench warrant for the arrest of [d]efendant and return of [MW].
>
> 4. Changes in [p]arenting time will only be by written agreement between the parties as the parties will arrange.

In contrast, the parenting time order set forth in the trial court's opinion grants defendant parenting time as follows:

> 1) Every other weekend from Thursday after school until Monday before school. [Defendant] shall make sure [MW] attends school on the days [defendant] has parenting time.
>
> 2) During the summer, when school is not in session, every other week from Wednesday at 5:00 p.m. until Monday at 5:00 p.m.

3) When there is no school, pickup and drop off shall be at a mutually agreeable location.

4) Holidays and school breaks shall be pursuant to the Wayne County co-parenting schedule.

5) [Defendant] shall have 2-week uninterrupted time in the summer for vacation. [Plaintiff] shall have the same.

6) Any other time the parties can agree upon.

The only comparison that could be made between the temporary parenting time schedule and the final parenting time schedule is that, in both parenting time schedules, defendant was granted parenting time every other week for a set period of approximately five days. However, the temporary parenting time schedule and the final parenting time schedule lack any further similarity. There is no evidence that the trial court merely copied the temporary parenting time order into its final opinion. Accordingly, defendant's argument lacks merit.

Defendant further argues that the trial court failed to implement the parenting time provisions agreed upon by the parties at trial. Defendant cites to MCL 722.27a(2), which states that, "[i]f the parents of a child agree on parenting time terms, the court shall order the parenting time terms unless the court determines on the record by clear and convincing evidence that the parenting time terms are not in the best interests of the child." MCL 722.27a(2). However, defendant does not explain the parenting time provisions to which the parties purportedly agreed. A review of the record suggests that, although each party testified regarding hypothetical parenting time terms they would be willing to agree on, the parties did not come to any actual agreement about the parenting time schedule.

Defendant also argues that the trial court failed to consider the parenting time factors listed in MCL 722.27a. MCL 722.27a(7) states as follows:

(1) The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

(a) The existence of any special circumstances or needs of the child.

(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

-14-

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise parenting time.

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors. [MCL 722.27a(7).]

The trial court did not expressly state which of the factors, if any, it considered when determining an appropriate parenting time schedule. However, as plaintiff correctly argues, the plain language of MCL 722.27a(7) suggests that the trial court is not ultimately *required* to consider any of the factors set forth in the statute. The statute merely states that the trial court *may* consider the parenting time factors set forth under MCL 722.27a(7), not that it *must* consider those factors. See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008) (stating that the term "may" is considered permissive, while the term "shall" is considered mandatory). Therefore, the trial court was not required to make express findings regarding the factors set forth under MCL 722.27a(7). Accordingly, defendant's argument must fail.

## 4. CHOICE OF SCHOOL

Finally, defendant contends that the trial court erred by finding that it was in MW's best interests to remain in the Grosse Pointe School District. The issue of whether enrollment in the Bloomfield Hills School District would be in MW's best interests was previously addressed herein. The trial court discussed this issue during its evaluation of the best-interest factors, specifically factor (h), MCL 722.23(h), regarding MW's home, school, and community record. However, in a separate section of its opinion, the trial court reiterated its finding that "it is in [MW]'s best interest to remain in the Grosse Pointe School system until further order of the court." Defendant uses this portion of the opinion to restate his argument that remaining in the Grosse Pointe School District was not in MW's best interests. However, as previously stated, defendant proffered no evidence to show that the Bloomfield Hills School District was in any way superior to the Grosse Pointe School District, or that removing MW from a familiar school and placing him in an entirely new environment would be in his best interests.

Defendant argues, once again, that enrollment in the Bloomfield Hills School District would provide MW with an opportunity to participate in a better speech and language therapy program than the program he previously attended. However, defendant proffered no evidence that MW needs to be enrolled in such a program or that he still suffers from a speech impediment, and admitted that he did not know if the Bloomfield Hills School District's speech and language therapy program was any better than the program that MW participated in through the Grosse Pointe School District. Accordingly, the trial court did not err by determining that remaining enrolled in the Grosse Pointe School District was in MW's best interests.

Defendant also argues that the trial court should have waited until MW was older to make a final decision regarding his school placement. Defendant observes that MW was only enrolled in a part-time preschool program, and suggests that it would have been better for the trial court to wait until MW is older to decide whether MW should be placed in a different school district. Defendant suggests that the trial court should have waited until MW was a full-time first grade student to make a final decision. However, defendant's argument clearly misinterprets the trial court's provision regarding MW's schooling. The provision clearly states that MW should remain in the Grosse Pointe School District "until further order of the court." The final order of custody, child support, and parenting time also states that MW should remain in the Grosse Pointe School District "until further order of the court." This language suggests that the trial court is open to revisiting the issue at a later date. Thus, defendant's argument that the trial court made a final or irreversible decision regarding MW's schooling lacks merit.

## IV. JUDICIAL BIAS

Defendant argues that the original trial judge was biased and had a settled predisposition regarding the outcome of the case, and that this case should be remanded to a different judge as a result. We disagree.

Generally, " '[i]n reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo.' " *Henry*, 282 Mich App at 679 (citation omitted). However, because defendant failed to raise the issue of judicial bias in the trial court by filing a motion to disqualify the trial judge, the issue is unpreserved, and this Court's review is for plain error affecting defendant's substantial rights. *Utrera*, 281 Mich App at 8. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citations omitted). In general, an error affects an individual's substantial rights if it "cause[s] prejudice, i.e., it affect[s] the outcome of the proceedings." *Utrera*, 281 Mich App at 9. A judgment or order may be reversed if "the plain, forfeited error . . . seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings . . . ." *Id*.

Under MCR 2.003(C), a trial judge may be disqualified if he or she "is personally biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1). However, "[a] trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). To show judicial bias, defendant must demonstrate that "the trial court harbored deep-seated favoritism or antagonism . . . that would have made fair judgment impossible." *Berger*, 277 Mich App at 714. The establishment of judicial bias or prejudice "usually requires that the source of the bias be in events or information outside the judicial proceedings." *Id*.

Defendant raises four separate claims of judicial bias. First, defendant argues that the trial court was biased against him for repeatedly telling him to stop mentioning an informal custody and parenting time arrangement that he and plaintiff followed before the custody proceedings were initiated. Defendant directs this Court to several instances wherein he was

admonished for discussing the custody arrangement. At a hearing regarding the temporary parenting time order, the trial court stated as follows:

> *Mr. Walker* [defendant]: Okay, Your Honor. As I mentioned since we've separated we've had agreements, a 50/50 schedule. We've compromised—
>
> *The Court*: Right, I understand that. I got that.
>
>             \*    \*    \*
>
> *Mr. Walker* [defendant]: And I—and we had a settlement—we had and [sic] agreement in place—
>
> *The Court*: There is no written agreement and don't keep repeating that to me . . . . I've already said it at least three times. Unless any agreement's reduced to writing, it's right here in the statute too. Unless it's reduced to writing and signed off on by me, it's not enforceable.

Additionally, at trial, the following exchanges occurred:

> *Mr. Walker* [defendant]: Yes, we had a 50/50 parenting time agreement, so during that schedule when I—my time with [MW], I moved him to my brother's house.
>
> *The Court*: [Defendant], this [c]ourt admonish[ed] you several times about the agreement that you keep putting forth—
>
>             \*    \*    \*
>
> *The Court*: [Defendant] has clearly stated to the [c]ourt on previous occasions that he believed he had an agreement for 50/50 parenting time.
>
>         The [c]ourt's already addressed, more than once . . . that there was nothing in writing that relates to that.
>
>             \*    \*    \*
>
> *The Court*: I have to make a decision based on what's going on now. What the established custodial environment is now. What—how to apply the best interest factors. It doesn't matter what any so-called agreement was in the past.

Defendant contends that the trial court's repeated admonishment regarding the issue of his former agreement for parenting time with plaintiff constituted judicial bias. A review of the record indicates that the agreement defendant refers to throughout the proceedings was an informal oral agreement that plaintiff and defendant adhered to regarding parenting time before plaintiff initiated custody proceedings in the trial court. Defendant attempted to frame the informal agreement for parenting time as a binding and enforceable agreement akin to a court order for parenting time. The trial court consistently attempted to explain to defendant that the

-17-

agreement to which he referred was not enforceable and that he could not accuse plaintiff of violating a parenting time agreement that was not set forth in an order entered by the trial court. The trial court's behavior does not rise to the level of judicial bias. It is clear that the trial court was merely attempting to explain the law governing parenting time agreements to defendant and to stop him from mischaracterizing the nature of the parenting time agreement that defendant and plaintiff previously shared. Although the trial court may have been impatient or annoyed, "expressions of impatience, dissatisfaction, annoyance, and even anger . . . are within the bounds of what imperfect men and women . . . sometimes display." *Cain v Dep't of Corrections*, 451 Mich 470, 497 n 30; 548 NW2d 210 (1996).

Second, defendant argues that the trial court displayed bias against him by accusing him of lying, or omitting the truth about the fact that he was taking medication for injuries sustained in a car accident. Defendant directs this Court to the following exchange:

> *Q*. Are you on any medication?

> *A*. No. I take injections now in the—in to my cervical spine, upper cervical spine.

* * *

> *Mr. Walker* [defendant]: I had an occipital nerve block—

> *The Court*: No, what, what type of—what is it that's being injected into your system?

> Wouldn't it be a type of medication?

> *Mr. Walker* [defendant]: It's a medication, yes.

> *The Court*: Okay. So the answer to the question is yes you are on medication?

> *Mr. Walker* [defendant]: Oh, yes.

Defendant contends that, during this exchange, the trial court accused him of lying or inaccurately stating that he was not taking any medication. Defendant insinuates that the trial court's questioning was accusatory and showed judicial bias. However, the trial court's questioning amounts to little more than an attempt to clarify whether the injections defendant received constituted a type of medication. There is no indication that the trial court was accusatory or that it insinuated that defendant was not being truthful, and no indication that it displayed any personal bias against defendant. *Cain*, 451 Mich at 495.

Third, defendant argues that the trial court was biased against him because it rejected defendant's testimony regarding criminal sexual conduct committed by plaintiff's father, purportedly because the sexual misconduct defendant described did not occur in Grosse Pointe

-18-

Woods, Michigan, where plaintiff lived with MW. Defendant states that the following exchange displayed judicial bias:

*Q.* Okay. So you said [plaintiff's father is] a known flasher in the community. What does that mean? What community?

*A.* There were incidents where there was media—

*Q.* What community?

*A.* I believe in the Macomb County area.

*Q.* So when you say the community, you're not talking about Grosse Pointe Woods?

*A.* No.

Defendant argues that, during this exchange, the trial court dismissed his concerns regarding plaintiff's father because plaintiff's father did not commit any crimes in Grosse Pointe Woods, Michigan. However, in crafting his argument, defendant clearly failed to observe that the exchange to which he directed this Court occurred during cross-examination. At no point did the trial court interject during defendant's testimony or make any untoward comments; rather, plaintiff's counsel asked the questions to which defendant now objects. Since the trial court did not take part in this exchange, it could not have displayed judicial bias. "Because defendant has not proved the factual predicate supporting [his] argument," he is not entitled to relief. *Nahshal v Fremont Ins Agency*, 324 Mich App 696, 720; 922 NW2d 662 (2018). Accordingly, this portion of defendant's argument must fail.

Fourth, defendant argues that the trial court was biased because it was upset by the fact that defendant kept MW away from plaintiff for several days, but did not show the same concern for the fact that plaintiff terminated defendant's parenting time with MW. Defendant directs this Court to several instances of alleged bias that occurred at a pretrial hearing, including the following:

*The Court*: Okay, so under what world or circumstance do you think that, that's okay?

*Mr. Walker* [defendant]: So, [plaintiff] and I have shared custody through our agreement of 50/50 schedule of physical and legal.

*The Court*: Okay.

*Mr. Walker* [defendant]: We've—

*The Court*: Okay, well that's not unless it's reduced to writing, it doesn't mean anything. But no, listen to what I'm saying. Under—in what world is it

okay to go pick up your four-year-old from school and not tell mom that's what you're gonna [sic] do and then keep the child? That's what I'm asking you, 'cause [sic] you're not on very solid ground here.

* * *

*The Court*: Do you agree that [plaintiff] stopped letting you have parenting time? Do you agree with that part?

*Mr. Walker* [defendant]: Yes.

*The Court*: Okay, and do you agree that you went to the school and took [MW] without consulting [plaintiff] or letting her know about it?

*Mr. Walker* [defendant]: Yes, Your Honor.

*The Court*: Now how do you think a mother and a four-year-old would feel about that?

*Mr. Walker* [defendant]: Probably as bad as I felt.

*The Court*: Or worse because [plaintiff]'s not sure where [MW] is, right? [Plaintiff]'s not sure what you've done if you haven't communicated with her.

* * *

*The Court:* Okay. The sinking feeling that a parent would have, when they get to the spot where they believe their four-year-old is and he's not there.

*Mr. Walker* [defendant]: Your Honor, [plaintiff] literally told me . . . that she would not bring him back to me. I can empathize with her experience if that's the situation—

*The Court*: Then what you do is you file a motion with the [c]ourt like [plaintiff] did.

Defendant asserts that the trial court displayed bias toward him by harshly reprimanding him for taking MW from school without informing plaintiff, whereas it did not rebuke plaintiff for threatening to prevent defendant from seeing MW.

A review of the record suggests that defendant's claim lacks merit. Although the trial court was noticeably irritated with defendant, the record also indicates that the trial court chastised plaintiff for her behavior as well. The trial court told plaintiff and defendant that they were both "frankly, acting in immature ways," and reprimanded plaintiff for attempting to prevent defendant from seeing MW for inconsequential reasons. The trial court told plaintiff, "you're not telling me you stopped letting [defendant] see [MW] because there was some danger," to MW. Rather, the trial court concluded that plaintiff behaved poorly and immaturely

-20-

by threatening to take the privilege of seeing MW away from defendant. Thus, defendant's contention that the trial court only derided him for his actions and not plaintiff is patently false.

Although the trial court was hostile toward defendant, a trial court's remarks, "which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App at 567. There is no evidence that the trial court displayed favoritism toward plaintiff, or antagonism toward defendant, "that would make fair judgment impossible." *Cain*, 451 Mich at 496 (quotation marks and citation omitted). Accordingly, although this Court may remand a case to a different judge if it concludes that the judge from the original proceedings "would have difficulty in putting aside previously expressed views or findings," or if reassignment is necessary to "preserve the appearance of justice," *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004), nothing in the record supports defendant's argument that the trial court displayed judicial bias, and remand to a new judge is unnecessary.

Affirmed.

/s/ David H. Sawyer
/s/ Thomas C. Cameron